REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2783

September Term, 2015
_____

STATE OF MARYLAND

v.

DONTE GRAHAM
_____

Berger,
Leahy,
*Krauser,

JJ.
_____

Opinion by Krauser, J.
_____

Filed: July 27, 2017

*Krauser, Peter B., J., now retired, participated in the hearing of this case while an active member of this Court and as its Chief Judge; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the preparation of this opinion.

Charged with possession of cocaine and attempted distribution of cocaine, in the District Court of Maryland for Baltimore City, Donald Graham, appellee, filed a discovery request in that court, for information relating to the drug testing that had been performed, by the Baltimore City Crime Lab, as to substances that he had allegedly thrown to the ground, shortly before his arrest. When, on the scheduled date of his District Court trial, Graham demanded a jury trial, his case was transferred to the Circuit Court for Baltimore City.

On the date that his trial was to commence in the circuit court, Graham's counsel informed that court that the State had not provided the information requested by the defense, in the District Court and, on those grounds, moved to dismiss the case. The State responded that it had only learned of the request the preceding Friday (that is, the last business day before trial) and that it would be "more than happy" to provide him with the information requested. Then, without explanation or even further inquiry, the circuit court granted the defense's motion and dismissed the charges.

Appealing that decision, the State contends that the circuit court erred in granting Graham's motion to dismiss the criminal charges against him because of the State's failure to provide, before trial, the discovery requested by the defense. In support of that contention, the State makes three claims: first, that its failure to provide the discovery that had been requested by Graham was not a discovery violation under Maryland Rule 4-262, which both sides agree is the rule that governs the present dispute;[1] second, that even if its

---

[1] When a case is transferred from the District Court to the circuit court, pursuant to a jury trial prayer, Rule 4-262, which is the discovery rule generally applicable in (cont.)

failure to provide that discovery did violate Rule 4-262, dismissal of the charges against Graham was not an available sanction under that rule; and, third, that, assuming that dismissal of the charges against Graham was a sanction available to the circuit court, the court abused its discretion in choosing that sanction.

Because we conclude that the circuit court did have the discretion to impose a sanction for the State's discovery violation but abused that discretion in imposing the drastic sanction that it did, we vacate the judgments of the circuit court and remand for further proceedings.

### Background

On August 17, 2015, Baltimore City police saw Graham engage in what they believed to be a hand-to-hand drug transaction. As a uniformed police officer approached Graham, moments after that transaction, he observed Graham throw small items under a vehicle parked on the street. Then, from under that vehicle, the officer retrieved four zip lock baggies containing a "rock like substance[,]" which he believed to be cocaine. Graham was thereafter arrested and charged with possession of cocaine and attempted distribution of that drug in the District Court of Maryland for Baltimore City.

---

(cont.) criminal actions in the District Court, also governs the action in the circuit courts, unless the jury trial prayer was made in writing and filed at least 15 days before the scheduled date of trial in the District Court. *See* Md. Rule 4-301(b) & (c). Because Graham's prayer for a jury trial was neither made in writing nor filed at least 15 days before his District Court trial but was orally made on the day of his District Court trial, it is undisputed that Rule 4-262 governed discovery in his case before both the District Court and the circuit court.

On October 13, 2015, Graham filed requests for discovery,[2] in the District Court, demanding that the State, pursuant to Maryland Rule 4-262(d)(2)(D)[3] and *Cole v. State*, 378 Md. 42 (2003), provide the following documents and records: "[a] complete copy of the Baltimore City Crime Lab case file including but not limited to . . . results from any preliminary [drug] screening tests, gas chromatography ("GC"), gas chromatography and mass spectrometry analysis ("GC/MS"), Fourier transform infrared spectroscopy ("FTIR"), as well as . . . any reference standards and controls, and the results of any re-examinations conducted on any samples"; "[d]ocuments relat[ed] to [his] case . . . regularly kept in a place other than the case file"; "any other information," related to his case, "that the crime lab ha[d] in its possession [or] control"; "all maintenance records pertaining to any GC or GC/MS machine used in [his] case" that recorded maintenance conducted "for the relevant time period prior to the [drug testing that was] performed in [his] case"; copies of "[a]ny protocols[ ] and procedures" related to the drug testing done

---

[2] Graham filed contemporaneously a "Request for Discovery" and a "Supplemental Discovery Demand," seeking discovery related to the chemical analysis of the drug evidence at issue in this case; the latter set forth Graham's demand in greater detail, and we quote it in the discussion that follows.

[3] Rule 4-262(d)(2)(D) provides that, upon written request of the defense, the State must provide, as to each expert witness it intends to call at trial, the following:

> (i) the expert's name and address, the subject matter on which the expert is expected to testify, the substance of the expert's findings and opinions, and a summary of the grounds for each opinion;
> (ii) the opportunity to inspect and copy all written reports or statements made in connection with the action by the expert, including the results of any physical or mental examination, scientific test, experiment, or comparison; and
> (iii) the substance of any oral report and conclusion by the expert[.]

3

in his case; "[u]pdated curriculum vita [sic]" of any analyst involved in testing the drugs that were seized; and, five years of "proficiency tests . . . for any analyst involved in [his] case."

On October 29, 2015, the State filed, in the District Court, a document captioned: "Request for Discovery from Defendant and the State's Disclosure to the Defendant." In that document, the State asserted that, "[u]pon request of the Defendant," it would, "by appointment[,]" provide "[t]he opportunity to review and copy all documents, including but not limited to[ ] training and operations manuals, calibration records, procedures and reference material pursuant to [*Cole v. State*], 378 Md. 42 (2003), . . . and Rule 4-262."[4]

---

[4] In the appendix to its brief, the State included copies of both of Graham's discovery requests, the "State's Request for Discovery from Defendant and the State's Disclosure to the Defendant," and a print-out from the Baltimore City Crime Lab summarizing the drug testing performed in Graham's case.

Challenging that addition to the State's appendix, Graham filed, during the pendency of the appeal before this Court, a motion to strike pages 3 through 8 (the latter two documents) of the State's appendix, contending that they were "not part of the appellate record in this case" and not appendix material permissible under Maryland Rule 8-504(b). Although conceding that the copies of his own discovery requests were likewise not permissible appendix material, Graham did not move to strike them because the parties referred to them during the hearing, which concluded with dismissal of all charges.

The State filed a response to that motion, conceding that the material was not permissible appendix material under Rule 8-504(b) and that, in its words, it "cannot confirm that the [print-out summary from the Baltimore City Crime Lab] was filed in the District Court along with the request and disclosure form." It therefore did not oppose Graham's motion to strike pages 3 through 8 of its appendix. The State was, however, able to confirm that the "State's Request for Discovery from Defendant and the State's Disclosure to the Defendant," that is, appendix page 3, had been filed with the District Court on October 29, 2015, and consequently filed an unopposed motion to correct the record by adding that document to it. To avoid confusion, we shall grant both Graham's motion to strike, but only as to pages 4 through 8 of the State's appendix, and the State's unopposed motion to correct the record.

4

On December 16, 2015, the date Graham's trial was to commence in the District Court, he requested a jury trial. His case was then transferred to the Baltimore City circuit court, where it was scheduled for trial on Tuesday, January 19, 2016. On the Friday before trial, which was the last business day before trial,[5] Graham's counsel called the Assistant State's Attorney assigned to Graham's case and informed her that he had not yet received the information or material he had requested in his supplemental discovery request, though he had received a form summarizing what the State intended to disclose. Then, on January 19, 2016, when Graham's case was called for trial, the following verbal exchange occurred, between court and counsel, regarding Graham's discovery demand:

[DEFENSE]: Your Honor, the preliminary matter the Defense is going to raise, and I did speak with [the Assistant State's Attorney] about this on Friday, is that in any drugs case, as a matter of course, we now in [the] District Court request the supplemental discovery from the lab that tested the drugs under Cole and we filed a request for this on October 13th.

THE COURT: Requesting what?

[DEFENSE]: Request for the copy of the –

THE COURT: Chemical analysis?

[DEFENSE]: Well, not just the chemical analysis, Your Honor, but also the copy of the file, the testing and --

[STATE]: Yes.

THE COURT: Okay.

_____

[5] On Monday, January 18, 2016, the Maryland State Government was closed, in observance of the Martin Luther King, Jr., holiday.

5

| | |
|---|---|
| [DEFENSE]: | -- we normally receive a summary. It goes through the gas chromatography -- |
| THE COURT: | Okay. |
| [DEFENSE]: | -- spikes and, Your Honor, we still have received -- |
| [STATE]: | Sorry. |
| [DEFENSE]: | -- we still haven't received anything and as of today. And so I raise that with the Court -- |
| THE COURT: | What's going on with that? |
| [DEFENSE]: | -- preliminarily. |
| [STATE]: | Your Honor, the State was not aware until [Graham's counsel] called me on Friday to let me know he had not received it. When this prayed, I didn't have any notes or did not know that they had not received any call and the request was made October 13th. Your Honor, this prayed on December 16th. There was no indication that any of [Graham's prior counsel before the District Court] indicated they didn't have Cole or, you know, we did give the LIMS, the -- |
| THE COURT: | Okay. |
| [STATE]: | -- normal LIMS.[6] |
| THE COURT: | Okay. We'll need to discuss this when the Defendant comes up. |

---

[6]The prosecutor's statement that the State "did give the LIMS," an acronym for "Laboratory Information Management System," an electronic case management system used by forensic laboratories, to the defense appears to refer to the print-out, from the Baltimore City Crime Lab, summarizing the drug testing performed in Graham's case. Graham denied having received that print-out, and the State was unable to prove that it had actually been provided to the defense.

When Graham thereafter arrived in court, the discussion between the court and counsel, regarding Graham's discovery request, resumed:

[DEFENSE]:                Your Honor, what I had raised at the bench was that in this case a request for the supplemental discovery under Cole v. Maryland was filed on October the 13th and I have a time stamped copy of that that it was also delivered to the State's Attorney Office. As of this date today we have not received any of that discovery. And as I explained at the bench, Your Honor, we do -- our office and I does [sic] file these requests routinely at [the] District Court in every drugs case, so it should not have come to a -- as a surprise to the State that the request was filed because we do it in every drugs case.

THE COURT:              All right. State?

[STATE]:                  Your -- and, Your Honor, the State had indicated that the State at this level was not aware that there was a Cole issue until Friday when [Graham's counsel] called me. At District the -- I believe a Cole request was filed October 13th. However, Your Honor, this matter did pray on December 16th which was two months after. Made no indication to anyone in District that they were missing Cole and so prayed the case anyways, Your Honor. Therefore, the State is more than happy to get this discovery now that we know that the Defense --

THE COURT:              You don't have it?

[STATE]:                  No, Your Honor. There was never a request made in District apparently and the -- I -- the State's not --

THE COURT:              Doesn't matter if it was made in District as long as it was made in Circuit under this case, right?

[STATE]:                  Yes, Your Honor, and the State did not know there was this request.

THE COURT:              Hmm. They said it was hand delivered.

[DEFENSE]:                It's time stamped as being --

7

| | |
|---|---|
| [STATE]: | To us? |
| [DEFENSE]: | -- delivered in District -- |
| [STATE]: | Oh, in District, Your Honor. |
| [DEFENSE]: | -- in District Court, Your Honor. |
| THE COURT: | Oh, in [the] District Court. |
| [STATE]: | Yes, Your Honor. |
| THE COURT: | Oh but it's all one -- |
| [STATE]: | Yes. |
| THE COURT: | -- one office, isn't it? |
| [STATE]: | Yes, Your Honor. The -- |
| THE COURT: | Uh-huh. |
| [STATE]: | -- the State's just letting you know, Your Honor, I was made aware Friday and we'll be glad to get [Graham's counsel's] discovery [request] but the State does not have it in its possession. |
| [DEFENSE]: | And, Your Honor, at this juncture I would move to dismiss on those grounds |
| THE COURT: | Motion to dismiss is granted. |

**Discussion**

**I.**

In support of its contention that the circuit court erred in dismissing the charges against Graham under Rule 4-262 because of its failure to provide, before his circuit court trial, the information that Graham had previously demanded in his District Court discovery

8

requests, the State first claims that its failure to provide that information was not a discovery violation under Rule 4-262(i). We disagree.

To be more precise, the State maintains that the circuit court erred in finding that it had violated Rule 4-262 because section (i) of that rule, which specifically addresses the procedure a trial court must follow to ensure that the parties have complied with their discovery obligations, does not impose a "hard deadline" as to when discovery must be provided to the opposing party but merely states that discovery must be completed prior to trial "[t]o the extent practicable." And, since there was no "evidence in the record that it was practicable for the State to provide the drug testing discovery and that the prosecutor refused to do so," there was no basis upon which to find, reasons the State, that it had violated Rule 4-262.

Invoking the same section of Rule 4-262, section (i), which provides, as the State noted, that a court may grant a delay or continuance when compliance is impracticable, Graham claims that, in his case, "[t]here was no evidence or explanation offered by the prosecutor to suggest that it was impracticable for the State to provide the requested discovery prior to . . . calling the case on its trial date" and that, absent such evidence, "the failure to provide the requested discovery was a discovery violation."

As these competing claims of the parties require us to interpret Rule 4-262(i), we note that, when we are asked to render such an interpretation, we employ "the same well-established canons of construction that we use when interpreting statutes." *Dove v. State*, 415 Md. 727, 738 (2010) (citation omitted). That is, "we look to [the] plain text" of the rule, and, if "the words of the rule are plain and unambiguous, our inquiry ordinarily

9

ceases and we need not venture outside the text of the rule." *Johnson v. State*, 360 Md. 250, 264-65 (2000) (citations omitted). But, if "the words of the rule are ambiguous," then we may turn to "other sources to glean the intent of the rule." *Long v. State*, 343 Md. 662, 667 (1996) (citation and quotation omitted).

Specifically, section (i) of Rule 4-262 provides:

**(i) Procedure.** To the extent practicable, the discovery and inspection required or permitted by this Rule shall be completed before the hearing or trial, except that asserting a defense pursuant to subsection (e)(2) of this Rule shall be made at least 10 days before the trial. If a request was made before the date of the hearing or trial and the request was refused or denied, or pretrial compliance was impracticable, the court may grant a delay or continuance in the hearing or trial to permit the inspection or discovery.

The "plain text" of section (i) of Rule 4-262 clearly does not support the State's claim that, for a trial court to find a discovery violation, there must be evidence that a prosecutor intentionally refused to comply with a request for discovery or inspection permitted under the rule. Nothing in the plain language of that section, expressly or impliedly, suggests otherwise. In fact, for a discovery violation to occur, it need not even be intentional. *Pantazes v. State*, 141 Md. App. 422, 440 (2001) (observing that "[e]ven an unintentional failure to provide discoverable . . . information may constitute a discovery violation"), *cert. denied*, 368 Md. 241 (2002); *accord Williams v. State*, 364 Md. 160, 177 (2001) (noting that whether a discovery violation "was a result of willful aforethought or inadvertence is irrelevant") (citation and quotation omitted).

We acknowledge, however, that it is unclear from the language of section (i) of Rule 4-262 whether, as the State claims, a trial court must make a predicate finding that it was "practicable" for a party to have completed the discovery sought under Rule 4-262

10

before it may find that the party's failure to do so was a discovery violation, or whether, as Graham claims, the purpose of section (i) of the rule is merely to clarify that, when it is "impracticable" for a party to comply with the rule's requirements prior to trial, the trial court has the discretion to grant a delay or continuance. Consequently, we shall turn to the history of the rule and the minutes of the Rules Committee to assist us in resolving this question. *Long*, *supra*, 343 Md. at 667.

Prior to 2009, the substance of section (i) of Rule 4-262 was set forth in section (b) of that rule. It read as follows:

> The discovery and inspection required or permitted by this Rule shall be completed before the hearing or trial. A request for discovery and inspection and response need not be in writing and need not be filed with the court. If a request was made before the date of the hearing or trial and the request was refused or denied, the court may grant a delay or continuance in the hearing or trial to permit the inspection or discovery.

Then, in 2009, the Criminal Rules Subcommittee presented to the Rules Committee the following changes to section (b) and relabeled it as "section (i)" of Rule 4-262:

> The discovery and inspection required or permitted by this Rule shall be completed before the hearing or trial <u>to the extent practicable</u>. ~~A request for discovery and inspection and response need not be in writing and need not be filed with the court~~. If a request was made before the date of the hearing or trial and the request was refused or denied, <u>or pretrial compliance was impracticable,</u> the court may grant a delay or continuance in the hearing or trial to permit the inspection or discovery.

Rules Committee, minutes, p. 75-76 (October 2, 2009) (emphasis and strikethrough text in original).

The new language, proposed by the Subcommittee, was intended to ensure "the completion of discovery in a timely fashion." *Id.* at 78. Recognizing that, given the

11

"shorter timetable in District Court cases[,]" it might not always be possible to request or provide written discovery prior to a hearing or trial, the amended rule, proposed by the Subcommittee, provided that parties must complete discovery and inspection required or permitted by the rule "before the hearing or trial to the extent practicable" and that, if discovery "cannot be completed in a timely fashion, then the [trial] court in its discretion may allow a delay or continuance." *Id.*

The Rules Committee largely adopted the proposal of the Criminal Rules Subcommittee and submitted, as part of its One Hundred Sixty-Third Report to the Court of Appeals, the following draft of Rule 4-262(i):

> *To the extent practicable, the* discovery and inspection required or permitted by this Rule shall be completed before the hearing or trial. [A request for discovery and inspection and response need not be in writing and need not be filed with the court.] If a request was made before the date of the hearing or trial and the request was refused or denied, *or pretrial compliance was impracticable,* the court may grant a delay or continuance in the hearing or trial to permit the inspection or discovery.

37 Md. Reg. 134, 158 (Jan. 29, 2010) (italicized text is new; bracketed text was struck from prior version). Thereafter, the Court of Appeals adopted, effective July 1, 2010, the amended Rule 4-262 "in the form previously published," that is, as it appeared in the One Hundred Sixty-Third Report of the Rules Committee. 37 Md. Reg. 531 (Mar. 26, 2010).

Thus, the language in Rule 4-262(i), upon which the State relies, namely, that it was required to complete the discovery specified under other sections of Rule 4-262 before the start of a hearing or trial "[t]o the extent practicable," was added to the rule because, given the shorter time table for the disposition of cases in the District Court, circumstances might arise where there was insufficient time for a party to request or complete written discovery

12

prior to trial. So it logically follows that, under such circumstances, the burden falls on the party seeking a delay or continuance to explain to the court why it was "impracticable" to do so. In the absence of such an explanation, or at least manifest circumstances suggesting the impracticability of a pre-trial discovery or inspection, the court has no reason to believe that it was not practicable for the party, from whom discovery was requested, to timely produce the information, documents, or material requested.

Furthermore, even if the State's interpretation of Rule 4-262(i) were correct, the court did not err, we believe, in finding a discovery violation. In this case, Graham filed a discovery demand for the drug testing information, in the District Court, on October 13, 2015. More than three months later, on the very date Graham's trial was scheduled to commence in the circuit court, the State had still not provided the requested discovery. Given the length of time the State was on notice of its obligation to provide the drug testing discovery, the circuit court could reasonably have concluded, and certainly in the absence of any evidence to the contrary, that it was practicable for the State to have provided the requested discovery material before the date of Graham's trial.

## II.

The State next contends that, in the event of a party's violation of its discovery obligations under Rule 4-262, the "only remedy available" to the court, under that rule, is to "disqualify a witness [of the violating party] from testifying." In support of that claim, the State relies upon Maryland Rule 4-262(n), which provides:

**(n) Failure to Comply With Discovery Obligation.** The failure of a party to comply with a discovery obligation in this Rule does not automatically disqualify a witness from testifying. If a motion is filed to disqualify the witness's testimony, disqualification is within the discretion of the court.

The State contrasts Rule 4-262(n) with the broader language of its circuit court counterpart, Rule 4-263(n),[7] which lists several sanctions that a court may impose upon finding a discovery violation, including the declaration of a mistrial or the entry of "any other order appropriate under the circumstances." Because Rule 4-262(n) does not mention any other sanction besides disqualification of a witness's testimony, whereas Rule 4-263(n) expressly authorizes a court to select from a broad range of sanctions, the absence, in Rule 4-262(n), of Rule 4-263(n)'s enumeration of available remedies indicates, according to the State, that a violation of Rule 4-262 may not be penalized with any sanction, other than disqualification of a witness's testimony.

Graham responds that Rule 4-262(n) merely "clarif[ies] that one possible sanction – witness disqualification – is discretionary rather than automatic." He points out that that section does not "purport to set forth all available responses and sanctions that a court could

---

[7] Maryland Rule 4-263(n) provides:

**(n) Sanctions.** If at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances. The failure of a party to comply with a discovery obligation in this Rule does not automatically disqualify a witness from testifying. If a motion is filed to disqualify the witness's testimony, disqualification is within the discretion of the court.

14

impose" and, consequently, absent such a "remedy" provision, the circuit court had the discretion to impose sanctions under Rule 1-201(a), which provides that a court, faced with a party's violation of a mandatory[8] rule that does not prescribe a consequence for its violation, "may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule."[9]

Rule 4-262(n) states that, when a party has failed to "comply with a discovery obligation," that failure "does not automatically disqualify" a witness presented by that party from testifying. But "[i]f a motion is filed to disqualify the witness's testimony, disqualification is within the discretion of the court." Although that rule addresses the imposition of a specific discovery sanction, namely, disqualification of a witness's testimony, it is silent as to whether that sanction is the only one available to the trial court, when a party fails to comply with a Rule 4-262 discovery obligation.

---

[8] Rule 4-262(d)(1) and (2) provide that "the State's Attorney **shall** provide to the defense" various enumerated items, section (h) of that same rule provides that a party, upon obtaining "further material information," "**shall** supplement [its] response promptly," and section (i) provides that, "[t]o the extent practicable, the discovery and inspection required or permitted by this Rule **shall** be completed before the hearing or trial[.]" (Emphasis added.) Accordingly, it is undisputed that Rule 4-262 qualifies as a mandatory rule.

[9] Maryland Rule 1-201(a) provides:

> **(a) General.** These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word "shall" or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule.

15

To resolve this ambiguity, we turn once more to the deliberations of the Rules Committee. In 2007, the Rules Committee proposed the addition of what was then subsection (a)(3) to Rule 4-262, which later became section (n) of Rule 4-262. The Committee's minutes include the following statement:

> Disqualification is not automatic; a motion to disqualify must be filed first, and then it is within the court's discretion to allow a continuance, **or if there is an egregious violation, the court can do what it believes is appropriate under all the circumstances** . . . .

Rules Committee, minutes, p. 53-54 (May 11, 2007) (emphasis added). Thus, the Rules Committee minutes suggest that disqualification of a witness from testifying was a sanction that may only be imposed after a party has filed a motion to disqualify. There is no indication, however, that the new subsection was intended to circumscribe a trial court's broad discretion in fashioning other appropriate sanctions for discovery violations. In fact, it is stated in the Rules Committee's minutes that, pursuant to the new subsection, a trial court "can do what it believes is appropriate under all the circumstances," in addressing an "egregious" discovery violation.

Nonetheless, the State claims that the court below lacked the discretion to dismiss the charges, as it is not mentioned as a potential remedy in Rule 4-262 but was included in that rule's circuit court counterpart, Rule 4-263.[10] Fortunately, the Rules Committee minutes also addressed this variance. Those minutes state, in pertinent part:

> Rule 4-262 varies from the circuit court rule, which goes into a detailed listing of motions to compel and the sanctions that are available. The District

---

[10] Although Rule 4-263(n) does not expressly mention dismissal, that sanction is covered by the catch-all provision, "or enter any other order appropriate under the circumstances."

16

Court has a time issue, with a 30-day turnaround between the time of arrest and the time of trial, in some cases. **The Rule allows the court to exercise discretion if there is a failure to comply with the Rule**.

Rules Committee, minutes, p. 53-54 (May 11, 2007) (emphasis added).

Thus, it is clear that, notwithstanding the omission of a list of available sanctions in Rule 4-262(n), it was intended that, under that rule, the trial court may exercise its discretion in choosing the appropriate sanction, in the event a party does not comply with Rule 4-262. Moreover, to conclude otherwise, as the State requests, would lead to an absurd result, as it would render a court powerless to impose any sanction whatsoever, where the violation did not involve the testimony of a witness.

In sum, the Rules Committee minutes indicate that, notwithstanding the language in what is now Rule 4-262(n), a trial court possesses broad discretion, in responding to discovery violations, and that the variance in language between Rules 4-262 and 4-263 was not intended to suggest, in contrast to Rule 4-263(n), that the court has only one sanction available to it under Rule 4-262(n).[11]

## III.

Finally, the State claims that the circuit court abused its discretion in dismissing the charges against Graham as a discovery sanction because, according to the State, "none of the four considerations" set forth in *Raynor v. State*, 201 Md. App. 209 (2011), to guide a trial court, in imposing sanctions, "counsel[ed] in favor of dismissal." The *Raynor* Court

---

[11] Consequently, we need not consider Graham's claim that the circuit court had the authority to dismiss the charges against him under Rule 1-201(a).

instructed that, "in exercising its discretion regarding sanctions for discovery violations, 'a trial court should consider: (1) the reasons why the disclosure was not made; (2) the existence and amount of any prejudice to the opposing party; (3) the feasibility of curing any prejudice with a continuance; and (4) any other relevant circumstances.'" *Raynor*, 201 Md. App. at 228 (quoting *Thomas v. State*, 397 Md. 557, 570-71 (2007)) (citations and footnotes omitted).

As for the first factor, "the reasons why the disclosure was not made," the State clearly failed in its duty to timely disclose the information at issue. On the other hand, there is no dispute that the State's failure to disclose was inadvertent and was the result, presumably, of poor communications between the District Court and circuit court divisions of the State's Attorney's office. Moreover, at no time during the three-month delay did Graham's attorney notify the State's Attorney's office that he had not received the information requested, even though he described that information, in his brief, as "critically important" to his defense; nor did he even use the opportunity provided by his subsequent appearance in the District Court, on the scheduled date of his trial there, to raise that issue. Furthermore, Graham's counsel waited until the last business day before Graham's trial, in the circuit court, to inform the State that he had not received this "critically important" information. And, finally, the State offered to rectify its error by providing the material requested.

The second factor, "the existence and amount of any prejudice to the opposing party," and the third factor, "the feasibility of curing any prejudice with a continuance," are interrelated, and we shall examine them together. As for the former, the Court of

18

Appeals has said that, when a criminal discovery rule is violated, "a defendant is prejudiced only when he is unduly surprised and lacks adequate opportunity to prepare a defense, or when the violation substantially influences the jury," and that "the prejudice that is contemplated is the harm resulting from the nondisclosure." *Thomas*, 397 Md. at 574. While the discovery Graham sought, and which the State failed to provide, was potentially, in his words, "critically important" to his defense,[12] the State indicated its willingness to provide that information when Graham raised the issue before the commencement of his trial. Furthermore, Graham does not claim that a continuance to permit the State to transmit that information, and to allow his counsel time to review and evaluate it, would have resulted in any prejudice to the defense at the ensuing trial of this matter.

Moreover, although the State did not expressly request a postponement or continuance, it impliedly did so. When that issue was raised, at the outset of Graham's circuit court trial, the prosecutor assured the circuit court that the State would be "more than happy" to provide the discovery Graham was seeking. But, the circuit court, without inquiring into how quickly the State would be able to provide that information or giving any indication as to why it chose to impose, not the least, but one of the most drastic sanctions at its disposal, did precisely that.

This action was taken by the court, notwithstanding that the "most accepted view of discovery sanctions is that in fashioning a sanction, the court should impose the least severe sanction that is consistent with the purpose of the discovery rules," *Raynor*, 201 Md. App.

---

[12] The discovery sought was, potentially, "critically important" to Graham's defense because it was dispositive of an element of the crimes charged.

at 228 (quoting *Thomas*, 397 Md. at 571) (citations omitted), which "is to give a defendant the necessary time to prepare a full and adequate defense." *Id.* (quoting *Ross v. State*, 78 Md. App. 275, 286 (1989)). Indeed, "[i]t is well-settled," the Court of Appeals has declared, "that the sanction of dismissal should be used sparingly, if at all," *Thompson v. State*, 395 Md. 240, 261 (2006) (citations omitted), because, in the words of the United States Court of Appeals for the Eleventh Circuit, in *United States v. O'Keefe*, 825 F.2d 314 (11th Cir. 1987), a federal appellate decision upon which our highest Court relied, in addressing the issue, the dismissal of charges "for prosecutorial misconduct is an extreme sanction." *Id.* at 318.

Moreover, the circuit court made no inquiry into "the feasibility of curing any prejudice," the non-disclosure may have caused Graham, by ordering a continuance. *Raynor*, 201 Md. App. at 228. Given the State's professed willingness to promptly provide the requested discovery information, and the fact that the deadline, under Maryland Rule 4-271, for bringing the case to trial was nearly five months in the future,[13] a continuance

---

[13] Maryland Rule 4-271 provides in pertinent part:

**(a) Trial Date in Circuit Court.**

(1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4-213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4-214 (a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. . . .
(cont.)

was apparently a feasible remedy and would have presumably cured any prejudice Graham suffered as a consequence of the State's non-disclosure, thereby furthering "the purpose of the discovery rules," which "is to give a defendant the necessary time to prepare a full and adequate defense." *Raynor*, 201 Md. App. at 228 (citation and quotation omitted).

Finally, as to the fourth *Raynor* factor, "any other relevant circumstances," the circuit court did not identify any other relevant circumstances that it considered in concluding that dismissal was the appropriate remedy for the State's failure to provide the discovery sought by Graham.

"When," as here, "the trial court exhibits a clear failure to consider the proper legal standard" in exercising its discretion, it abuses that discretion. *Kusi v. State*, 438 Md. 362, 385 (2014) (citations and quotations omitted). Consequently, we hold that the circuit court, although vested with the authority to impose the sanction it did for the State's discovery violation, abused its discretion in dismissing the charges against Graham. We therefore vacate its judgments and remand the case to the circuit court for further proceedings.

**APPELLEE'S MOTION TO STRIKE GRANTED AS TO PAGES 4 THROUGH 8 OF THE STATE'S APPENDIX. STATE'S UNOPPOSED MOTION TO CORRECT THE RECORD GRANTED. JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

(cont.) Because Graham was represented by counsel in the District Court, the starting date, for purposes of Rule 4-271, was "the date the case was docketed in the circuit court," that is, December 16, 2015. Consequently, the "*Hicks*" date was 180 days later, that is, Monday, June 13, 2016. *State v. Hicks*, 285 Md. 310 (1979).

21