*State of Maryland v. Jose Antonio Santamaria-Landaverde*, No. 0608, Sept. Term 2024.
Opinion by Arthur, J.

**CRIMINAL PROCEDURE—SUPPRESSION OF EVIDENCE UNDER *BRADY V. MARYLAND***

Evidence is deemed to be suppressed under *Brady v. Maryland*, 373 U.S. 83 (1963), if it is known to the State, but unknown to the defense. Thus, where a defendant has actual or constructive knowledge of favorable information that the State has allegedly withheld, or where such information was available to the defense through reasonable and diligent investigation, there is no *Brady* violation.

In this case, the State inadvertently failed to disclose two pieces of exculpatory evidence until the day before trial—a recording of the victim's interview and a DNA report. Defense counsel had, at the very least, constructive knowledge of both pieces of evidence; he had notice that the victim participated in a recorded interview and that DNA samples were taken during the investigation. Defense counsel also admitted that he chose not to ask the State for the missing evidence so he could attempt to persuade the circuit court to exclude the evidence or dismiss the charges altogether.

The Appellate Court of Maryland held that the State did not suppress evidence within the meaning of *Brady*. The defense had sufficient knowledge of the allegedly withheld evidence before the State's delayed disclosures, and it strategically refrained from informing the State of its errors to hopefully gain a tactical advantage at trial. The defense cannot acknowledge its intention to exploit the State's omissions in one breath and claim that the State suppressed evidence in the next.

**CRIMINAL PROCEDURE—SANCTIONS FOR DISCOVERY VIOLATIONS**

When the State's failure to disclose evidence falls short of a *Brady* violation, it may still violate Maryland's discovery rules. In exercising its discretion to impose a discovery sanction, a trial court should consider why the disclosure was not made, whether the defendant was prejudiced by the violation, whether a continuance could cure the prejudice, and any other relevant circumstances. Whether the State commits a discovery violation or a *Brady* violation, a trial court should impose the least severe sanction. The sanction of dismissal, which should be used sparingly, if at all, is reserved for the extraordinary case where no less drastic remedy is available.

In this case, the circuit court incorrectly determined that the State's failure to disclose evidence was a *Brady* violation. The court concluded that dismissal of the indictment was appropriate because no less drastic remedy could alleviate the prejudice that resulted from the State's delayed disclosures.

The Appellate Court of Maryland held that the circuit court failed to employ the proper standard for imposing discovery sanctions.  Under the correct standard, the court could not have concluded that dismissal was appropriate.  A continuance would have allowed the defense to review the evidence and recalculate it case—all of which it could have accomplished well before trial had it informed the State of its (inadvertent) omissions and requested the evidence.

Circuit Court for Prince George's County
Case No. C-16-CR-23-002069

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0608

September Term, 2024

_____

STATE OF MARYLAND

v.

JOSE ANTONIO SANTAMARIA-LANDAVERDE

_____

Arthur,
Leahy,
Eyler, Deborah S.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed: May 30, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Jose Antonio Santamaria-Landaverde was charged with committing various sexual offenses against a child. Before trial, Santamaria-Landaverde moved to dismiss the indictment as a sanction for the State's inadvertent discovery violations. The Circuit Court for Prince George's County granted the motion.

The State appealed, as it is entitled to do under section 12-302(c)(2) of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 2020 Repl. Vol.). We reverse.

## FACTUAL AND PROCEDURAL HISTORY

### Investigations and Indictment

The charges against Santamaria-Landaverde stem from alleged sexual misconduct with a girl who was 12 or 13 years old at the time. The incidents allegedly occurred between August 2021 and September 2022 in Prince George's County. Some of them allegedly occurred in Santamaria-Landaverde's car.

The Prince George's County Police conducted an initial investigation. In the course of that investigation, the County Police discovered that they lacked jurisdiction because the events allegedly occurred in a recreational area administered by the Maryland-National Capital Park and Planning Commission. Consequently, the County Police transferred the case to the Maryland Park Police, which completed a separate investigation.

In June 2023, during the County's investigation, the Child Advocacy Center ("CAC") interviewed the victim and her father. A County detective took notes during

both CAC interviews, and the prosecutor participated via Zoom.  Both interviews were recorded on video.

In July 2023, about 10 months after the last of the incidents allegedly occurred, the Park Police swabbed Santamaria-Landaverde's car for the presence of semen or seminal fluids.  A DNA report became available to the Park Police and, it appears, to the County's lead detective, on October 30, 2023.  The report found no trace of Santamaria-Landaverde's semen or seminal fluid inside of his car.  Although reports of this type are ordinarily sent to the prosecutor, the prosecutor in this case did not receive the report at the time it was generated.

Meanwhile, on July 27, 2023, the State indicted Santamaria-Landaverde on charges of sexual abuse of a minor, second-degree rape, sexual solicitation of a minor, and third-degree sexual offense.  He was held in pretrial detention, without bond, until the trial date in February 2024.

### Discovery and Motions

On October 18, 2023, Santamaria-Landaverde moved to compel the production of discovery.  The court ordered full disclosure by November 1, 2023.

In accordance with that order, the State provided defense counsel with what it believed was all the discovery material.  Amongst the discovery materials provided were (1) the County detective's bullet-point notes taken during the victim's and her father's CAC interviews, (2) a video file labeled "Victim CAC," and (3) property records indicating that DNA samples were taken from Santamaria-Landaverde and his car in July 2023.

2

Although the State disclosed that DNA samples had been taken from Santamaria-Landaverde and his car, the State's initial disclosures did not include the actual DNA report on those samples. In addition, in the video file labeled "Victim CAC," the State mistakenly included the video file of the victim's *father's* interview with the CAC. The State did not produce the video file of the victim's interview.

During a status conference on November 15, 2023, the prosecutor informed the judge that no other discoverable information was outstanding. The parties then jointly moved to postpone the trial, which had been scheduled to begin later that month. The case was reset for a motions hearing on February 16, 2024, and a two-day trial beginning on February 28, 2024.

During case preparation, defense counsel learned of a potential investigation into similar claims by the victim against a different person who worked for the same employer as Santamaria-Landaverde. On January 13, 2024, defense counsel emailed the State, requesting suspected *Brady*[1] material.

On February 6, 2024, Santamaria-Landaverde moved to dismiss the charges on the ground that the State had failed to respond to his email request and produce the requested *Brady* evidence. The motion did not mention the victim's CAC interview, the DNA report, or any other missing discovery.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963) (establishing a criminal defendant's federal constitutional right to the pretrial disclosure of exculpatory information).

At a motions hearing on February 16, 2024, the State informed the defense that the investigation did not occur and, thus, that there was no evidence to produce. The court accepted the State's representation and deemed Santamaria-Landaverde's motion to dismiss to be moot. Again, the defense did not mention the victim's CAC interview, the DNA report, or any other missing discovery.[2]

On Monday, February 27, 2024—the day before the trial was to begin—the State moved for a continuance. As grounds for the motion, the State asserted that its lead detective would be out of town until the following week. The State also asserted that the prosecutor would need additional time to prepare because of scheduling conflicts, including a trial that had lasted longer than expected and a second trial that had been specially set for two weeks, but had just ended with a guilty plea.

On the day before the trial was to begin, the prosecutor realized that she had the video of the victim's father's CAC interview, but that she did not have the video of the victim's interview. That evening, the prosecutor obtained the video of the victim's interview from a Prince George's County detective. She immediately sent the video, which is one hour and 45 minutes long, to defense counsel.

Also on the day before the trial was to begin, the prosecutor learned that she had not received (and thus that the State had not produced) the results from the DNA swab of Santamaria-Landaverde's car. Although the County's lead detective had apparently had

---

[2] During this motions hearing, the defense sought some of the victim's medical records. The court ordered that certain personal information be turned over to defense counsel only. This discovery matter is not germane to the issue on appeal.

this DNA report since October 30, 2023, neither he nor the Park Police, which procured the report, had sent a copy of it to the prosecutor. The County's lead detective sent the report to the prosecutor at 11:00 p.m. on the evening before trial. She received it the following morning and produced it to defense counsel.

On the morning of February 28, 2024, defense counsel again moved to dismiss the charges as a sanction for the State's discovery violations. The court opted to resolve the discovery issues in Santamaria-Landaverde's motion to dismiss before considering the State's motion for a continuance.

Santamaria-Landaverde's attorney claimed that he was never informed that the victim's CAC interview was recorded or that a DNA report existed. He argued that the State's failure to produce that evidence until just before trial was an inexcusable discovery violation, as the discovery deadline was November 1, 2023. Defense counsel characterized the DNA report as exculpatory evidence and argued that the State's failure to provide the report was an "egregious *Brady* violation" that impinged on Santamaria-Landaverde's due process rights and prejudiced the defense by leaving insufficient time to review the results and hire an expert. Defense counsel also argued that dismissal of the indictment was the proper sanction, but requested, in the alternative, that the court exclude testimony from "all law enforcement [officers]" and "the child[.]"

The State conceded that it had violated the discovery rules by failing to produce the DNA report and the video of the victim's interview by the discovery deadline. The State contended, however, that its discovery violations did not violate *Brady* and, thus, that the court should impose the least severe sanction. It argued that a brief continuance

5

would be adequate to allow defense counsel time to review the recently disclosed evidence, recalibrate the defense, and cure any prejudice that the belated disclosure might have caused.

The State also argued that the initial discovery materials put the defense on notice that the CAC had recorded its interview with the victim. The State pointed out that the detective's contemporaneous notes of the CAC interview and the video file labeled "Victim's CAC" clearly informed the defense that the CAC had conducted a recorded interview with the victim. The State also pointed out that a second detective's notes refer to the victim's forensic interview at the CAC.

In addition, the State observed that its disclosures put the defense on notice of the existence of a DNA report. The State argued that it had disclosed the lead detective's case file, which showed that swabs had been taken from Santamaria-Landaverde's car and, thus, informed defense counsel that a report would follow.[3]

The State explained that it had inadvertently failed to produce the video of the victim's interview with the CAC and the DNA report. It called a detective (not the lead detective), who testified that, through "human error," "the victim's interview was mislabeled." The prosecutor told the court that she had received only one video—the video of the father's interview, which was mislabeled as the victim's interview. The

---

[3] In fact, defense counsel said, at the outset of the hearing, "I readied my defense based on that understanding"—i.e., the understanding that the detectives had swabbed the car and gotten DNA samples.

6

prosecutor said that she discovered that error in trial preparation when she opened the video file and saw that it contained the interview of the father, not the interview of the victim.

The State also explained why it had inadvertently failed to produce the final DNA report. According to the prosecutor, DNA reports are typically sent, by email, both to the prosecutor and the lead detective. In this case, however, the Park Police, which obtained the DNA samples, apparently did not include the prosecutor on the email chain. Consequently, the prosecutor did not receive the report when it was generated and did not know of it. The lead detective was not present to explain what he knew about the failure to forward the report to the prosecutor, but the circumstances suggest that he erroneously assumed that the prosecutor had received the report by email, because that is what typically occurs.

The trial court rejected the State's arguments and granted Santamaria-Landaverde's motion to dismiss. The court began by expressing its recognition that the State has a great number of criminal cases, that the State's *Brady* obligations are extensive, and that "people make mistakes." The court, however, denied that it was "harping on an oops."

The court offered its perspective on what it called the procedural history of the case. It conveyed its displeasure about the lead detective's absence. It observed that Santamaria-Landaverde had been held without bond since July 2023. It noted that the defense had filed a motion to compel in October 2023, that the court had ordered the State to produce all discovery by November 1, 2023, and that the State had later

7

represented that discovery was complete. It remarked that the State had not responded in writing to various motions.

The court agreed with both parties that the State's failure to provide the recording of the victim's CAC interview and the DNA report by the discovery deadline were indisputable discovery violations. But the court also agreed with the defense and determined that, because the delayed disclosures included exculpatory evidence, the State's discovery violation reached constitutional magnitude and violated Santamaria-Landaverde's *Brady* rights.

Having concluded that the State had violated its *Brady* obligations, the circuit court looked to *Smith v. State*, 484 Md. 1 (2023), the Supreme Court of Maryland's most recent decision concerning *Brady*. *Smith* dealt with the intentional concealment of highly exculpatory evidence over the course of several decades. *Smith* also dealt with whether a *Brady* violation had caused such irreparable prejudice at an earlier trial that the ordinary remedy of a new trial was inappropriate, not with whether the court should dismiss an indictment before a trial had ever occurred. Nonetheless, the trial court resolved to apply *Smith v. State* to this case because, it said, the case "specifically addressed this issue regarding using *Brady* exculpatory information . . . [and] that not providing that is a violation of due process."

The court prefaced its ruling by acknowledging, correctly, that dismissal is the "most severe" discovery sanction and the appellate courts "encourage" lower courts not to employ that "draconian" remedy. The court determined, however, that no less drastic sanction was feasible in this case. The court cited the State's "piecemeal" disclosures. It

8

was, the court said, "inexcusable" that Santamaria-Landaverde had been "held without bond" while the State had failed to meet its discovery obligations. The court took umbrage at the lead detective's absence, even as it recognized that the State had no obligation to call him as a witness at trial. The court declared that it had "absolutely zero confidence that everything has been provided."

The court proceeded to address the young victim, who was in the courtroom. Once again, the court described the remedy of dismissal as a "drastic measure." It said that the dismissal of the charges was "fundamentally unfair" to the victim, because she would be "unable to have her day in Court." But, the court said, it was "important for the victim to hear" that "everyone needs to be held accountable." With that, the court concluded that it had no choice but to grant the motion to dismiss.

The State's timely appeal followed.[4]

### QUESTION PRESENTED

The State presents one question: "Did the lower court abuse its discretion, mis-applying settled law, when it dismissed the indictment against Appellee as a sanction for a discovery violation?"

We answer this question affirmatively, reverse the judgment, and remand this case for further proceedings consistent with this opinion.

---

[4] The victim did not note an appeal, but she filed a brief and a reply brief in the purported capacity of an appellant. Upon the State's motion, we treated the victim's brief as that of an amicus.

**STANDARD OF REVIEW**

An appellate court reviews without deference a trial court's determination of whether the State violated its disclosure obligations under *Brady*. *Canales-Yanez v. State*, 472 Md. 132, 156 (2021) (citing *Ware v. State*, 348 Md. 19, 48 (1997)). A defendant alleging that the State committed a *Brady* violation bears the burden of production and persuasion regarding the alleged violation. *Yearby v. State*, 414 Md. 708, 720 (2010).

"Generally, we review a trial court's decision on a motion to dismiss an indictment for an abuse of discretion." *State v. Grafton*, 255 Md. App. 128, 143 (2022). But even when the State has violated *Brady*, "'dismissal of an indictment as a sanction is appropriate only where less drastic alternatives are not available.'" *Id.* at 150 (quoting *Williams v. State*, 416 Md. 670, 693 n.8 (2010)).

This Court may reverse a circuit court's decision on discovery sanctions only if we find an abuse of discretion. In this context, as in others, an abuse of discretion does not occur simply because the appellate court would not have made the same ruling as the circuit court. *See, e.g.*, *McLennan v. State*, 418 Md. 335, 353 (2011). Nonetheless, in imposing discovery sanctions in a criminal case, the circuit court's discretion is far from unbounded: "the court should impose the least severe sanction that is consistent with the purpose of the discovery rules[]" (*Thomas v. State*, 397 Md. 557, 571 (2007)), and the "exclusion of evidence should be ordered only in extreme cases." *Id.* at 573.

10

The trial court's error in this case is two-fold. First, the court erred by concluding that the State committed a *Brady* violation, rather than an ordinary discovery violation. Second, the court abused its discretion in dismissing the charges as a sanction for the State's discovery violation, instead of imposing a less severe sanction, such as a continuance.

**A. Brady**

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *accord Williams v. State*, 416 Md. 670, 692 (2010); *Yearby v. State*, 414 Md. 708, 717 (2010); *Adams v. State*, 165 Md. App. 352, 362 (2005). Here, even if the evidence was favorable to the accused and even if prejudice ensued because of the delayed disclosure, the finding of a *Brady* violation is, nonetheless, incorrect as a matter of law. The *suppression* element is dispositively unmet.

Suppression is a multifaceted element of a *Brady* violation. "Evidence will be deemed to be suppressed within the meaning of *Brady* if it is 'information which had been known to the prosecution but unknown to the defense.'" *Conyers v. State*, 367 Md. 571, 601 (2002) (quoting *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 557 (4th Cir. 1999)) (further citation omitted); *accord Diallo v. State*, 413 Md. 678, 704 (2010).

11

"[S]uppression is inextricably intertwined with . . . the defendant's independent duty to investigate, especially in a situation where the defense 'was aware of the potentially exculpatory nature of the evidence as well as its existence.'" *Yearby v. State*, 414 Md. at 722-23 (quoting 6 Wayne R. LaFave, *et al.*, *Criminal Procedure*, § 24.3(b), at 362 (3d ed. 2007))). "[T]he *Brady* rule was not intended 'to displace the adversary system as the primary means by which truth is uncovered.'" *Ware v. State*, 348 Md. 19, 38-39 (1997) (quoting *United States v. Bagley*, 473 U.S. 667, 675 (1985)); *accord Yearby v. State*, 414 Md. at 723. "Accordingly, the *Brady* rule does not relieve the defendant from the obligation to investigate the case and prepare for trial." *Ware v. State*, 348 Md. at 39.

"*Brady* offers a defendant no relief when the defendant knew or should have known facts permitting [the defense] to take advantage of the evidence in question or when a reasonable defendant would have found the evidence." *Id.*; *accord Diallo v. State*, 413 Md. at 705. Thus, "[i]f the defendant has actual or constructive knowledge of the allegedly withheld exculpatory information, there cannot be a *Brady* violation." *Yearby v. State*, 414 Md. at 724; *accord Williams v. State*, 416 Md. at 691. "The prosecution cannot be said to have suppressed evidence for *Brady* purposes when the information allegedly suppressed was available to the defendant through reasonable and diligent investigation." *Ware v. State*, 348 Md. at 39.

"[T]he necessary inquiry is whether the defendant knew or should have known facts that would have allowed [the defense] to access the undisclosed evidence." *Id.*;

12

*accord Yearby v. State*, 414 Md. at 724. The defendant's constructive knowledge is assessed under a reasonable person standard. *Yearby v. State*, 414 Md. at 724.

Santamaria-Landaverde had, at the very least, constructive knowledge of both pieces of evidence that were allegedly suppressed—the video of the victim's interview and the DNA report. Defense counsel had notice that the CAC had interviewed the victim because he received a detective's notes of the interview and because he received a video file that was labeled (incorrectly) as the video of the victim's interview. In fact, defense counsel told the circuit court that he had opened the video file and discovered that the State had sent him the father's interview and not the victim's interview. In oral argument in this Court, counsel reiterated that he knew that the video was the father's— i.e., he knew that the State had mistakenly sent him the wrong video and had meant to send the right one—the video of the victim.

Defense counsel also had notice that the State would have a DNA report, because the State had produced documentation showing that it had taken DNA samples from Santamaria-Landaverde's car. Counsel told the circuit court that he had "readied [his] defense based on" the understanding that the detectives had swabbed the car and gotten DNA samples. In oral argument in this Court, counsel flatly stated that he "knew that they were withholding the DNA report." If defense counsel was surprised, it was only because he had not expected that the report would be helpful to his client.

If "[t]he ease with which [defense counsel] could have obtained the information and the obviousness of its sources [do not] all but confirm that [the defense] made a 'tactical decision' not to inquire about the" missing video and DNA report, defense

13

counsel's concessions certainly do. *Barnes v. Thompson*, 58 F.3d 971, 976-77 (4th Cir. 1995) (holding that the defense "either knew or easily could have discovered the location of the victim's gun through 'a reasonable and diligent investigation[,]'" like asking the State or reviewing the co-defendant's trial transcript, where the defendant admittedly knew the gun was recovered but simply did not know where it was found at the crime scene). Counsel appears to have refrained from informing the State of its omissions because he hoped to gain some tactical advantage, such as the suppression of the evidence or even the dismissal of the charges, if the State belatedly discovered its errors and attempted to correct them. When asked at oral argument, "So instead of doing something to try and get it, because you knew DNA had been collected, you just wanted to wait and argue that it shouldn't be admitted?," defense counsel responded, "Absolutely." Later he said, "I knew coming in on the [trial date] that I had a full bag of ammunition to exclude evidence." The defense cannot acknowledge its intention to exploit the State's omissions in one breath and claim that the State suppressed evidence in the next.

"'[T]here can be no *Brady* violation where there is no suppression of evidence.'" *Diallo v. State*, 413 Md. at 704 (quoting *Diallo v. State*, 186 Md. App. 22, 73-74 (2009), *aff'd in part*, *vacated in part*, 413 Md. 678 (2010)). In this case, no evidence was "suppressed" for purposes of *Brady*, so no due process violation occurred. The trial court's contrary conclusion is legally erroneous.

14

### B. Discovery Violation

Maryland Rule 4-263 governs the parties' discovery obligations in criminal cases. When the State's conduct "fails to rise to the level of a *Brady* violation" it "may still be a violation of Maryland's discovery rules." *Vanderpool v. State*, 261 Md. App. 163, 197, *cert. denied*, 487 Md. 461 (2024).

"To implement the objectives of the Rule, it is within the discretion of the trial court to impose sanctions if the Rule is violated." *Thomas v. State*, 397 Md. 557, 570 (2007). Rule 4-263(n) enumerates the sanctions the court may impose after a discovery violation. They include "grant[ing] a reasonable continuance, prohibit[ing] the party from introducing in evidence the matter not disclosed, grant[ing] a mistrial, or enter[ing] any other order appropriate under the circumstances." *Id*.

"In exercising its discretion regarding sanctions for discovery violations, a trial court should consider: (1) the reasons why the disclosure was not made; (2) the existence and amount of any prejudice to the opposing party; (3) the feasability [sic] of curing any prejudice with a continuance; and (4) any other relevant circumstances." *Thomas v. State*, 397 Md. at 570-71 (footnote omitted).

No matter the type of discovery violation committed—whether a mere violation of the rules or a violation of *Brady*—the cases are legion that trial courts should impose the least severe sanction and that "the sanction of dismissal should be used sparingly, if at all." *Thompson v. State*, 395 Md. 240, 261 (2006); *accord State v. Graham*, 233 Md. App. 439, 459 (2017); *see also Mason v. State*, 487 Md. 216, 242 (2024); *Smith v. State*, 484 Md. at 13; *Vanderpool v. State*, 261 Md. App. at 199; *State v. Grafton*, 255 Md. App.

15

at 150; *Myers v. State*, 243 Md. App. 154, 174 (2019); *Steck v. State*, 239 Md. App. 440, 466 (2018); *Correll v. State*, 215 Md. App. 483, 514 (2013); *Raynor v. State*, 201 Md. App. 209, 228 (2011); *Morton v. State*, 200 Md. App. 529, 543 (2011); *Williams v. State*, 416 Md. at 698; *In re Caitlin N.*, 192 Md. App. 251, 272 (2010); *Thomas v. State*, 397 Md. at 571.

Hence, even in a *Brady* case, which this is not, dismissal is almost never the appropriate remedy. *Smith v. State*, 484 Md. at 16. Indeed, the Court in *Smith v. State* made clear that "[a] court may . . . dismiss an indictment as a sanction in an extraordinary case of misconduct by the State *where no less drastic remedy is available*." *Id.* (emphasis added).

Had the circuit court applied the correct standard in this case—the standard that governs violations of the discovery rules that do not rise to the level of a *Brady* violation—the court could not have dismissed the charges.

Under the correct standard, the court would look first to the reasons why the disclosure was not made. *Thomas v. State*, 397 Md. at 570. In this case, it is beyond any serious dispute that the State failed to disclose the DNA report and the video of the victim's interview because of a pair of inadvertent oversights. The prosecutor was unaware of the DNA report until the eve of trial, apparently because the Park Police departed from protocol by sending the report only to the Prince George's County police detective and not to the prosecutor as well. In addition, the prosecutor believed (mistakenly) that the State had produced the victim's interview because it had produced a file labeled (incorrectly) as the victim's interview. There is not a shred of evidence in the

16

record that these discovery violations were anything other than inadvertent, and the circuit court judge did not find (and could not have found) otherwise.

Under the governing standard, the court would look next to "the existence and amount of any prejudice to" Santamaria-Landaverde. *Thomas v. State*, 397 Md. at 570-71. In this case, the discovery violation did not prejudice Santamaria-Landaverde to any significant extent, because he was neither "'unduly surprised'" by the belated disclosures nor deprived of an "'adequate opportunity to prepare a defense[.]'" *State v. Graham*, 233 Md. App. at 458 (quoting *Thomas v. State*, 397 Md. at 574). Defense counsel was on notice that the State had failed to disclose the victim's interview and the DNA report, but he chose not to request them. Instead, counsel chose to lie in wait until the State discovered its errors and then to attempt to persuade the court to dismiss the case or at least to exclude the evidence. By employing this strategy, the defense chose to walk into a trial without evidence it knew it could have had.

Under the governing standard, the court would also look to "the feasability [sic] of curing any prejudice with a continuance[.]" *Thomas v. State*, 397 Md. at 571. A brief continuance would have afforded Santamaria-Landaverde's counsel the time to study the victim's CAC interview video, review the DNA report, and recalculate his defense—all of which he could have accomplished well before trial had he requested the missing evidence. The court easily could have accounted for the State's discovery violations without affording the defense the windfall of a dismissal.[5]

---

[5] When asked at oral argument "Why wasn't a continuance a viable alternative [to dismissal] in the circumstances?[,]" defense counsel responded that a postponement

17

Defense counsel has argued that granting a continuance would reward the State for its errors. But "the purpose of the discovery rules 'is to give a defendant the necessary time to prepare a full and adequate defense'" (*Raynor v. State*, 201 Md. App. at 228 (quoting *Ross v. State*, 78 Md. App. 275, 286 (1989)), not to punish the State for its oversights. "[B]ad faith on the part of the State can justify exclusion of evidence or serve as a factor in granting a harsher sanction" (*Thomas v. State*, 397 Md. at 57 n.8), but there is no evidence of bad faith in this case. And even where a discovery violation is willful or in bad faith, "'the court should consider sanctioning the lawyer individually'" (*id.* (quoting *ABA Standards for Criminal Justice: Discovery and Trial by Jury*, Standard 11–7.1, Commentary, p. 114 (3d ed. 1996))), because remedies "'besides dismissal, such as a contempt of court or attorney disciplinary proceedings, allow the court to focus on the behavior of the prosecutor instead of granting a windfall to an unprejudiced defendant[.]'" *Id.* (quoting *State v. Deleon*, 143 Md. App. 645, 663 n.4 (2002)).

Defense counsel also argued that a continuance would prolong Santamaria-Landaverde's pretrial detention. We do not discount that concern. But Santamaria-Landaverde's counsel could have asked the court to grant him conditional pre-trial release in order to alleviate the prejudice that he would have suffered from a continuance that he did not want. Or, counsel could have pressed the court to reschedule the trial for the earliest date possible. Ultimately, though, our preference is that cases be decided on

---

would "give the State a second bite at the apple." The State, however, has not even had a first bite at the apple.

the merits, which is why we again stress that "the sanction of dismissal should be used sparingly, if at all." *Thompson v. State*, 395 Md. at 261.

The trial court's decision to dismiss the indictment was based on legal error and is, therefore, an abuse of discretion. The dismissal decision is reversed. Imposing any sanction for the State's discovery violations under the appropriate standard is now both impractical and unnecessary. Because this case has stood dormant for over a year pending this opinion, both parties have had time to review all the evidence and prepare their cases. The indictment is revived, and this case is remanded to the Circuit Court for Prince George's County.[6]

> **JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED. COSTS TO BE PAID BY APPELLEE.**

---

[6] As mentioned above, the victim purported to file a brief and a reply brief, which we have treated as an amicus brief. Among other things, the victim argued that, under § 11-403(b) of the Criminal Procedure Article of the Maryland Code (1984, 2018 Repl. Vol.), she had the right to address the court before the court dismissed the indictment. That argument is not before us for several reasons. First, the victim did not note an appeal, as she was entitled to do under § 11-103(b) of the Criminal Procedure Article. Second, even if she had noted an appeal, she did not preserve the issue, because she did not raise it in the circuit court. *See* Md. Rule 8-131(a).

19