Jonathan D. Smith v. State of Maryland, No. 31, September Term, 2022

**DUE PROCESS – REMEDY – DISMISSAL – RETRIAL –** Supreme Court of Maryland[*] held that, despite agreement of parties that only appropriate remedy is dismissal of charges, given that as result of conditional plea agreement, new trial ordered by Court did not take place and although conditional plea agreement entered into by parties contains proffer with respect to evidence, it was not possible for Court to assess with any confidence beyond speculation what evidence might have consisted of at retrial. Supreme Court, therefore, declined to address merits of Appellate Court of Maryland's decision affirming Circuit Court for Talbot County's denial of motion to dismiss.

Supreme Court of Maryland vacated judgment of Appellate Court and remanded case to that Court with instructions to remand case to circuit court with instructions that circuit court vacate its denial of motion to dismiss. Petitioner shall be allowed, if he chooses, to withdraw his conditional Alford plea, thereby leaving parties in same position as they were before circuit court's denial of Petitioner's motion to dismiss and parties' entry into conditional plea agreement. As such, remand that Supreme Court ordered for retrial would remain in effect unless State elects, consistent with its position in Supreme Court, not to prosecute.

---

[*]At the time that the petition for a writ of *certiorari* in this case was filed, the Supreme Court of Maryland was named the Court of Appeals of Maryland. At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Circuit Court for Talbot County
Case No. 20-K-00-006884

Argued: May 4, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 31

September Term, 2022

_____

JONATHAN D. SMITH

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
Hotten
Biran
Gould
Eaves
Wilner, Alan M. (Senior Justice,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.
Gould and Wilner, JJ., dissent.

_____

Filed: June 20, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

In 2001, Jonathan D. Smith, Petitioner, was convicted of the first-degree murder of Adeline Wilford. After unsuccessfully challenging his conviction on direct appeal and in post-conviction proceedings, Smith filed a petition for writ of actual innocence in the Circuit Court for Talbot County, which was denied. In 2020, however, this Court determined that the circuit court abused its discretion by using an incorrect legal standard in its denial of the petition and by failing to correctly assess the materiality of evidence. This Court remanded the case to the circuit court with instructions to grant the petition for writ of actual innocence and to conduct a new trial. In doing so, this Court noted that the State had an affirmative duty to disclose certain evidence to Smith under Brady v. Maryland, 373 U.S. 83 (1963), and had failed to do so prior to trial.

Before retrial in the circuit court, Smith filed a motion to dismiss the charges alleging due process and double jeopardy violations. Although the circuit court concluded that the State had failed to disclose potentially exculpatory evidence prior to trial, the circuit court denied the motion to dismiss, finding that the State's failure did not satisfy the criteria for dismissal.

After the circuit court's denial of the motion to dismiss, Smith and the State entered into a plea agreement in which Smith was permitted to enter a conditional plea pursuant to

Maryland Rule 4-242(d)[1] and <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970),[2] to First

Degree Felony Murder and Daytime Housebreaking in exchange for the State's agreement

to a suspended sentence and probation, *i.e.*, a sentence of time served, as the appropriate

sentence in the case. Under the terms of the plea agreement, Smith was permitted to not

admit guilt and to preserve his right to appeal the circuit court's denial of his motion to

dismiss. The parties agreed that Smith would withdraw his pending interlocutory appeal

of the motion to dismiss before the Appellate Court of Maryland[3] and that Smith could file

a notice of appeal and pursue an appeal of the judgment and sentence imposed by the circuit

court pursuant to the conditional <u>Alford</u> plea, including the circuit court's denial of the

motion to dismiss. The agreement was memorialized in an 18-page document titled

"Agreement and Proffer Statement in Support of Conditional *Alford* Plea Under Md.

Criminal Rule 4-242(d) Preserving Rights to Appeal Determination of Any Pre-trial

---

[1]Maryland Rule 4-242(d) permits a defendant to enter a conditional guilty plea, "[w]ith the consent of the court and the State," while allowing the defendant to "reserve the right to appeal one or more issues specified in the plea[.]" Md. Rule 4-242(d)(2). Any issue so reserved must have been "raised by and determined adversely to the defendant," and its resolution "in the defendant's favor would have been dispositive of the case." <u>Id.</u>

[2]Under <u>Alford</u>, a defendant can enter a guilty plea that contains a "protestation of innocence." <u>Bishop v. State</u>, 417 Md. 1, 19-20, 7 A.3d 1074, 1085 (2010) (cleaned up). With an <u>Alford</u> plea, a defendant maintains innocence but "agrees to a proffer of stipulated evidence or to an agreed statement of facts that provides a factual basis for a finding of guilt." <u>Franklin v. State</u>, 470 Md. 154, 168 n.1, 235 A.3d 1, 8 n.1 (2020) (citation omitted); <u>see also</u> Md. Rule 4-242(c) ("The court may accept the plea of guilty even though the defendant does not admit guilt.").

[3]At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

Motions to Date[,]" in which the parties agreed to a proffer of facts, and the State acknowledged that it had.

The Appellate Court affirmed the circuit court's denial of Smith's motion to dismiss, and Smith filed a petition for writ of *certiorari*, which we granted. Before this Court, as it did in the Appellate Court, the State agrees with Smith that its conduct did not comport with principles of due process and that "the only appropriate remedy is dismissal of the charges."

Despite the agreement of the parties that the only remedy is dismissal of the charges, given that as a result of the conditional plea agreement, the new trial ordered by this Court did not take place and although the conditional plea agreement entered into by the parties contains a proffer with respect to the evidence, it is not possible for this Court to assess with any confidence beyond mere speculation what the evidence might have consisted of at retrial. As a result, it is not possible for this Court to meaningfully evaluate whether Smith has suffered irreparable prejudice for which dismissal of the charges is the only feasible remedy. This Court, therefore, declines to address the merits of the Appellate Court's decision affirming the circuit court's denial of the motion to dismiss.

Rather, we vacate the judgment of the Appellate Court and remand the case to that Court with instructions to remand the case to the Circuit Court for Talbot County with instructions that the circuit court vacate its denial of the motion to dismiss. Smith shall be allowed, if he chooses, to withdraw his conditional <u>Alford</u> plea, thereby leaving the parties in the same posture as they were before the circuit court's denial of Smith's motion to dismiss and the parties' entry into the conditional plea agreement. As such, the remand

- 3 -

that this Court ordered for retrial in <u>Faulkner v. State; Smith v. State</u>, 468 Md. 418, 227 A.3d 584 (2020),[4] would remain in effect unless the State elects, consistent with its position in this Court, not to prosecute.

## BACKGROUND

In 2001, a jury found Smith guilty of the 1987 murder of Adeline Wilford and the burglary of her home.[5]  <u>See</u> <u>Smith</u>, 468 Md. at 425-426, 227 A.3d at 588-89.  In an unreported opinion, the Appellate Court of Maryland remanded the case for a hearing on Smith's motion for a new trial.[6]  <u>See</u> <u>Jonathan D. Smith v. State of Maryland</u>, No. 688, Sept. Term, 2001 (Md. Ct. Spec. App. Jan. 17, 2002).  This Court affirmed.  <u>See</u> <u>Smith v. State</u>, 371 Md. 496, 498, 810 A.2d 449, 450 (2002).  Following remand, the Appellate Court affirmed Smith's convictions in an unreported opinion.  <u>See</u> <u>Jonathan D. Smith v. State of Maryland</u>, No. 1184, Sept. Term, 2003 (Md. Ct. Spec. App. Nov. 4, 2004).

In 2005, Smith sought post-conviction relief, which the circuit court denied in 2009. <u>See</u> <u>Smith v. State</u>, 233 Md. App. 372, 391, 165 A.3d 561, 572 (2017).  The Appellate Court "subsequently denied his application for leave to appeal" in an unreported opinion.

---

[4]Although our decision in the case is normally cited as "<u>Faulkner</u>" pursuant to rules of citation, because this Court decided the cases of Smith and his codefendant, David R. Faulkner, in one opinion, we depart from that approach here as we are only concerned with Smith's present request for review.  Hereinafter, we shall refer to our 2020 decision as <u>Smith</u>, 468 Md. 418, 227 A.3d 584.

[5]This Court provided a full recounting of the facts of this case, including the State's misconduct, in <u>Smith</u>, 468 Md. at 427-59, 227 A.3d at 589-608, which we adopt and incorporate herein.

[6]Smith had argued that the State improperly withheld "exculpatory DNA evidence" from the defense, "specifically that DNA analysis of debris taken from under the victim's fingernails was not a match for" Smith or his codefendants.  <u>Smith v. State</u>, 233 Md. App. 372, 390, 165 A.3d 561, 571 (2017).

Id. at 391, 165 A.3d at 572 (citing Jonathan D. Smith, Sr. v. State of Maryland, No. 850, Sept. Term, 2009 (Md. Ct. Spec. App. June 9, 2010)).

In 2013, after recordings of conversations between then-Corporal John Bollinger of the Maryland State Police and Beverly Haddaway, Smith's aunt and a key witness for the State at trial, were disclosed, Smith filed a motion to reopen his post-conviction proceedings. See Smith, 468 Md. at 444, 227 A.3d at 599. In 2015, Smith filed a petition for a writ of actual innocence, contending that three pieces of newly discovered evidence—improperly withheld by the State—spoke to his innocence, could not have been discovered earlier, and created a substantial possibility that the end result of the trial may have been different. See id. at 445, 459-60, 227 A.3d at 600, 608; see also Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol., 2014 Supp.) § 8-301. The pieces of evidence in question were (1) the matching of palm prints from the victim's home, recovered immediately after the murder, to a different person, Ty Brooks, identified as a potential suspect[7] years prior to Smith's arrest; (2) recordings of conversations between Bollinger and Haddaway, discussing her interest in testifying in the case in exchange for an agreement by the State not to prosecute her grandson on then-pending drug charges;[8] and (3) statements by a witness that he saw a car other than the victim's outside the victim's house around the time

---

[7]We described the evidence of an alternative perpetrator in this case as "compelling" due to the palm prints and other evidence that was available to police a decade prior to the investigation of Smith. See Smith, 468 Md. at 468-71, 227 A.3d at 613-15.

[8]The recordings documented "Haddaway's professed willingness to alter her testimony based on whether the State would dismiss the drug charges against her grandson[,]" including threats to "destroy the case" if her demands were not met and "several important irregularities in the State's handling of the cases" against Smith and Faulkner. Smith, 468 Md. at 475-77, 227 A.3d at 617-19.

of the murder, which was inconsistent with the State's theory of Smith's involvement in the crime. See Smith, 468 Md. at 431, 444-45, 227 A.3d at 591, 599-600.

The motion to reopen and the actual innocence petition were consolidated for an evidentiary hearing, and the circuit court denied the motion and the petition. See id. at 445, 454, 227 A.3d at 600, 605. The Appellate Court subsequently reversed the circuit court's judgment, remanded the actual innocence petition to the circuit court, and ordered the circuit court to reopen Smith's motion for post-conviction relief. See id. at 454-55, 227 A.3d at 605

In 2018, on remand, the circuit court held a hearing and again denied Smith's actual innocence petition. See id. at 455, 459, 227 A.3d at 606, 608. On appeal, the Appellate Court affirmed the circuit court in an unreported opinion. See Jonathan D. Smith v. State of Maryland, No. 619, Sept. Term, 2018, 2019 WL 2369903, *1-2 (Md. Ct. Spec. App. June 3, 2019). In 2020, this Court vacated the Appellate Court's decision and ordered that Smith's petition be granted and that he be given a new trial. See Smith, 468 Md. at 480, 227 A.3d at 620. We held that "there is a substantial or significant possibility that, if the jur[y] had heard the newly discovered evidence along with the evidence that actually was presented . . . they would have reached a different result[.]" Id. at 479, 227 A.3d at 620. However, we did "not exonerate" Smith because of his "confessed involvement" and the "relatively consistent account" of his codefendant, Ray Andrews, who cooperated with the State. Id. at 426, 479, 227 A.3d at 588, 620.

On remand, in July 2020, Smith filed a motion to dismiss in the circuit court.[9] Smith contended that the State's willful misconduct violated his due process rights to such a degree that dismissal of the criminal information and indictment was the appropriate remedy and that the retrial would constitute double jeopardy.

**Ruling of the Circuit Court on the Motion to Dismiss**

On January 7, 2021, the circuit court denied Smith's motion on both grounds.[10] The circuit court concluded that despite the "troubling" conduct by the State, it was not criminal and did "not shock the conscience of the court." The court distinguished the State's conduct in the case from cases cited by Smith in support of dismissal, which involved "egregious" and "criminal" conduct by government actors. The court determined that a new trial was the appropriate remedy. After describing Smith's original trial strategy as contending that Haddaway was "thoroughly dishonest" and "not credible[,]" the court reasoned that if the case were retried "on the same evidence that was adduced at the original trial," the State's withholding of the information about the conversations and deal with Haddaway "would certainly move the needle toward" a finding that Smith "would not have the opportunity to have a fair trial." But the circuit court characterized Smith's new defense as a departure from his original strategy, focused instead on the alternative perpetrator argument, which, the court ruled, could potentially lessen the impact of the recordings,

---

[9]The State did not seek a retrial of Faulkner, and instead placed his case on the stet docket, which indefinitely postponed trial of the charges, although the charges could have been "rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown." Md. Rule 4-248(a).

[10]Because we did not grant Smith's petition for a writ of *certiorari* on the double jeopardy question, we do not address that aspect of the circuit court's ruling.

- 7 -

because his defense "does not depend on simply refuting" Haddaway's testimony. The court did "not discount the confrontation issues that relate to any hearsay testimony that the State might try to adduce[,]" but cautioned that it "must also be careful not to presuppose the disposition of any evidentiary matter until [] asked[.]"

The circuit court added that this line of reasoning served to distinguish the present case from United States v. Fitzgerald, 615 F.Supp.2d 1156 (S.D. Cal. 2009), a case cited by Smith. The court ruled that "there is a significant body of evidence that" likely would be presented and that the State could foreseeably "rely on evidence other than the testimony that [] Haddaway would give." The court also ruled that the new trial was "an opportunity to vindicate the evils of the first trial" and therefore did "not trigger the double jeopardy clause." (Citation omitted).

**Conditional Plea Agreement**

On April 20, 2021, the State and Smith informed the circuit court that they had reached an agreement for Smith to enter a conditional Alford plea, preserving for appeal the issue of the circuit court's denial of Smith's motion to dismiss.[11] The proposed plea agreement included an extensive proffer regarding the evidence that could be presented at retrial, which the parties agreed was established as the record "for the purpose of consideration of the Defendant's Appeal[.]" The agreement stated that Smith maintained his innocence and that his "decision to enter into this plea is based upon his view that his

_____

[11]The agreement indicated that Smith would withdraw the interlocutory appeal that he had noted on January 26, 2021, challenging the circuit court's denial of his motion. In accordance with the agreement, Smith withdrew the interlocutory appeal and it was dismissed by the Appellate Court on April 28, 2021.

- 8 -

ability to present a full defense at any retrial has been permanently prejudiced" and his view that "the State's intentional, willful, and/or reckless misconduct" meant that "he can no longer obtain a fair trial in this case." For its part, the State did not concede Smith's argument regarding due process and irreparable prejudice, but acknowledged that the State had "intentionally, willfully, and/or recklessly suppressed exculpatory evidence including, but not limited to," the recordings of Bollinger's conversations with Haddaway, the deal with Haddaway, possible collusion between Haddaway and Andrews's counsel, and misrepresentation of the exculpatory DNA evidence. Both parties agreed "that Haddaway's testimony would not be admissible at any retrial in the State's case in chief[.]"

After a hearing on the plea agreement, the circuit court found a sufficient factual basis to support a finding of guilt on the charges of first-degree murder and daytime housebreaking. Per the agreement, the court imposed a sentence of life imprisonment, entirely suspended except for time served, and placed Smith on a period of supervised probation for five years. Smith appealed, contending that the circuit court erred in denying his motion to dismiss the charges.

**Opinion of the Appellate Court of Maryland**

On September 28, 2022, the Appellate Court of Maryland affirmed the circuit court's judgment. See Smith, 255 Md. App. at 549, 283 A.3d at 725. On appeal, the Attorney General—reversing the State's Attorney's stance before the circuit court—joined Smith in arguing that "the circuit court's judgment denying the motion to dismiss on due

- 9 -

process grounds should be vacated and the charges dismissed."[12]  <u>Smith</u>, 255 Md. App. at 568, 283 A.3d at 737.  However, the Appellate Court concluded that it was not bound by the Attorney General's concession of error by the circuit court because Smith's argument presented a question of law.  <u>See</u> <u>Smith</u>, 255 Md. App. at 568-69, 283 A.3d at 737 (citing <u>Spencer v. Md. State Bd. of Pharm.</u>, 380 Md. 515, 523, 846 A.2d 341, 345-46 (2004)).

The Appellate Court first determined that the "law of the case doctrine" did not preclude it from considering Smith's contention that due process and double jeopardy concerns barred his retrial because this Court's 2020 decision in <u>Smith</u> "did not address the issues[.]"  <u>Smith</u>, 255 Md. App. at 569, 283 A.3d at 737.  The Appellate Court explained that Smith's contentions had not been settled by this Court's resolution of the earlier appeal.  <u>See</u> <u>id.</u> at 569, 283 A.3d at 737.

Nonetheless, the Appellate Court concluded that Smith's is not one of the "rare cases" that merits "[t]he extreme sanction of dismissal of an indictment" for due process violations.[13]  <u>Smith</u>, 255 Md. App. at 576, 283 A.3d at 741.  Rather, the Court held, the State's misconduct in Smith's case warranted "the most severe sanction" "typically" available for <u>Brady</u> violations: a new trial, which this Court had ordered for him.  <u>Smith</u>, 255 Md. App. at 576, 283 A.3d at 741.  After reviewing case law concerning <u>Brady</u>

_____

[12]The Attorney General did not agree, however, with Smith's double jeopardy argument.  <u>See</u> <u>Smith</u>, 255 Md. App. at 568, 283 A.3d at 737.  And, as it has in this Court, the Association of Prosecuting Attorneys supported Smith's due process position in an *amicus curiae* brief filed with the Appellate Court.  <u>See</u> <u>Smith</u>, 255 Md. App. at 568 n.14, 283 A.3d at 736 n.14.

[13]The Appellate Court also concluded that Smith's double jeopardy argument did not warrant dismissal of the indictment.  <u>See</u> <u>Smith</u>, 255 Md. App. at 577-80, 283 A.3d at 742-43.

violations, the Appellate Court used the following standard for assessing whether dismissal of an indictment is appropriate: "where a defendant shows willful misconduct by the State, dismissal is appropriate only when: (1) the misconduct results in irreparable prejudice; and (2) no less drastic alternative is available." Smith, 255 Md. App. at 576, 283 A.3d at 741.

The Appellate Court began with the premise that a new trial is the normal remedy for Brady violations and that Brady's "underlying principle" "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." Smith, 255 Md. App. at 570, 283 A.3d at 737-38 (quoting Brady, 373 U.S. at 87) (internal quotation marks omitted). The Court recognized Maryland case law stating that, in other contexts, dismissal is an "extreme sanction" that "should be used sparingly, if at all." Id. at 570, 283 A.3d at 737-38 (cleaned up). The Court observed, however, that neither the Supreme Court of the United States nor Maryland case law has authorized dismissal as a remedy for a Brady violation. See Smith, 255 Md. App. at 570-71, 283 A.3d at 738. Unpersuaded by Smith's argument that this Court's holding in Williams v. State, 416 Md. 670, 7 A.3d 1038 (2010) supported his position, the Appellate Court characterized as *dicta* the reference to dismissal of the indictment in that case—"dismissal of an indictment as a sanction is appropriate only where less drastic alternatives are not available"—because this Court held that no Brady violation occurred. Smith, 255 Md. App. at 571-72, 283 A.3d at 738-39 (quoting Williams, 416 Md. at 693 n.8, 7 A.3d at 1051 n.8) (internal quotation marks omitted).

The Appellate Court looked to other jurisdictions' treatment of dismissal as a remedy for a Brady violation. See Smith, 255 Md. App. at 572, 283 A.3d at 739. The

Court described circumstances under which United States Courts of Appeals and the Supreme Court of Alabama declined to order dismissal of charges due to Brady violations where the defendant either could not prove that the prosecutor's misconduct was willful or that prejudice could not be cured by a new trial, or both. See Smith, 255 Md. App. at 572-74, 283 A.3d at 739-40. Drawing on the reasoning in those and other cases from federal and State appellate courts, which emphasize that dismissal is a rare remedy that is appropriate only "when less drastic alternatives are not available[,]" the Appellate Court concluded that dismissal of an indictment for Brady violations is appropriate only when the "defendant shows willful misconduct by the State" that so prejudices the defendant that no fair trial is possible. Smith, 255 Md. App. at 574-576, 283 A.3d at 740-741.

Applying the above rubric, the Appellate Court concluded that, although Smith had established the State's willful misconduct, Smith had failed to show that he "suffered irreparable prejudice that could not be corrected by a new trial." Id. at 576, 283 A.3d at 741. The Court reasoned that Smith could utilize all of the evidence that had previously been suppressed in his new trial and that he could also introduce other newly discovered evidence, such as the palm prints. See id. at 576, 283 A.3d at 741. Recognizing the challenge facing Smith from Haddaway's death, the Appellate Court nonetheless determined that her prior testimony "could be excluded from the State's case-in-chief" due to the State's misconduct, but used by Smith to impeach other witnesses "if he thought it was in his best interest." Id. at 577, 283 A.3d at 741-42. As for fading memories of other witnesses, the Appellate Court concluded that "the record reflects prior statements made." Id. at 577, 283 A.3d at 742. The Court stated that "a remedy less drastic than dismissal

could be found" and that, therefore, Smith had "failed to meet his burden to show that due process required the extreme remedy of dismissal of the charges" due to the State's suppression of evidence at his first trial. Id. at 577, 283 A.3d at 742.

**Petition for a Writ of *Certiorari***

On November 15, 2022, Smith petitioned for a writ of *certiorari*, raising the following two issues:

> 1. Does the State's two-decade-long pattern of intentional, willful, and/or reckless misconduct, including widespread suppression of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) and knowing false statements, mandate dismissal with prejudice under the Due Process Clause?
>
> > A. Did the lower courts apply an erroneous standard and/or err in their evaluation of the prejudice suffered by Mr. Smith?
> >
> > B. Did the lower courts apply an erroneous standard and/or err in their determination that there was a less drastic alternative remedy to dismissal with prejudice?
>
> 2. Did the lower courts apply an erroneous standard or err in concluding that double jeopardy principles did not bar Mr. Smith's retrial despite the State's bad faith misconduct that prosecutors purposefully hid until long after trial?

On November 30, 2022, the State filed an answer to the petition for a writ of *certiorari* in which it "agree[d] with Smith that this Court should grant *certiorari* review and reverse the judgment of the [Appellate Court] as to due process." The State opposed the petition "as to double jeopardy, however, because it does not raise a genuine issue of broad public concern." (Citation omitted). We granted the petition, limited to the first question set forth in the petition, *i.e.*, we did not grant the petition as to the double jeopardy question. See Smith v. State, 482 Md. 534, 288 A.3d 1231 (2023).

- 13 -

**DISCUSSION**

**Introduction**

Smith and the State agree that the charges against Smith should be dismissed on due process grounds based on the Brady violations in the case, the State's admission that it engaged in willful misconduct, and irreparable harm caused by the State's misconduct. An appellate court reviews questions of law and constitutional interpretation *de novo*. See, e.g., State v. Hart, 449 Md. 246, 264, 144 A.3d 609, 619 (2016). The Due Process Clause of the Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, prohibits the government from engaging in conduct that "shocks the conscience" or that "interferes with rights implicit in the concept of ordered liberty[.]" United States v. Salerno, 481 U.S. 739, 746 (1987) (cleaned up). Generally, where a Brady violation occurs, a new trial is the appropriate remedy. See Williams v. State, 183 Md. App. 517, 526, 962 A.2d 440, 445 (2008), rev'd on other grounds, 416 Md. 670, 7 A.3d 1038 (2010). A court may, however, dismiss an indictment as a sanction in an extraordinary case of misconduct by the State where no less drastic remedy is available. See Williams, 416 Md. at 693 n.8, 7 A.3d at 1051 n.8. Consistent with our observations in Williams, courts in other jurisdictions and the Appellate Court in this case have set forth, in essence, the following standard for dismissal on due process grounds as the sanction for government misconduct: (1) willful misconduct, *i.e.*, intentional, knowing, or reckless misconduct, which may be shown through egregious misconduct or a pattern of repeated misconduct, along with: (2) irreparable prejudice; and (3) no less feasible alternative to dismissal to alleviate the prejudice. See, e.g., Gov't of

- 14 -

Virgin Islands v. Fahie, 419 F.3d 249, 254-57 (3d Cir. 2005); People v. Velasco-Palacios, 185 Cal. Rptr. 3d 286, 293-95 (Cal. Ct. App. 2015); United States v. Lang, No. 1:15-cv-00018-WAL-GWC, 2019 WL 1673317, *5, 11, 21 (D.V.I. Apr. 17, 2019), appeal dismissed, No. 19-2124, 2019 WL 5966406 (3d Cir. June 5, 2019). And, in United States v. Pasha, 797 F.3d 1122, 1139 (D.C. Cir. 2015), a case cited by both parties, a similar three-pronged standard was recognized:

> (1) a *Brady* violation requires a remedy of a new trial; (2) such new trial may require striking evidence, a special jury instruction, or other additional curative measures tailored to address persistent prejudice; and (3) if the lingering prejudice of a *Brady* violation has removed all possibility that the defendant could receive a new trial that is fair, the indictment must be dismissed.

Ordinarily, an appeal of a trial court's denial of a motion to dismiss criminal charges must await a final judgment. See In re Franklin P., 366 Md. 306, 335, 783 A.2d 673, 690 (2001). In Franklin, id. at 313-14, 783 A.3d at 677-78, this Court held that a trial court's denial of a motion to dismiss criminal charges for lack of jurisdiction was not immediately appealable under the collateral order doctrine. This Court explained that the trial court's denial of the motion to dismiss was "completely reviewable on appeal" after a final judgment. Id. at 328, 783 A.2d at 686. In this case, Smith initially contended that an interlocutory appeal was permitted under the collateral order doctrine. Smith and the State, however, entered into the conditional Alford plea and Smith withdrew the interlocutory appeal, leaving this Court in the position of reviewing the denial of motion to dismiss without a retrial having occurred.

Based on the proffer of facts in the conditional plea agreement, we have no difficulty

in determining that the first factor of the standard for evaluating whether a violation of due process warrants dismissal is satisfied. The State has admitted it engaged in egregious misconduct that was willful, *i.e.*, intentional, knowing, or reckless. Despite the proffer, though, there is less than sufficient information to assess with certainty the applicability of the last two factors: irreparable prejudice and whether a feasible alternative other than dismissal would alleviate the prejudice.

**Irreparable Prejudice and Feasible Alternative to Dismissal**

In the circuit court, the State had agreed not to use Haddaway's testimony at retrial in its case-in-chief, and Smith contended that testimony from other witnesses had been influenced by Haddaway's improper role in the case. Before this Court, Smith has argued, and the State has agreed, that Haddaway's actions "infected the case" to such an extent that, with Haddaway's death, Smith could never effectively counter that influence in a retrial. The parties assert that the State's misconduct so prejudiced Smith that he could not get a fair trial for four reasons: the memory problems of many witnesses, including key ones; the deaths of four witnesses; the inability of the defense to timely investigate leads while they were fresh, compromising what evidence would have been developed; and the benefit to the State of seeing the defense strategy over the many years of Smith's appeals.

Clearly, the State's actions and intervening circumstances created serious prejudice to Smith. Less clear is whether the prejudice is irreparable and whether there is no less drastic measure than dismissal. We are cognizant that the State has taken the extraordinary step of concluding that Smith cannot receive a fair trial—and the parties argue that it is an admission that should carry great weight. If the State had arrived at that conclusion prior

- 16 -

to Smith's entry of the conditional <u>Alford</u> plea, we would not be here. Nonetheless, we commend the State for taking a position consistent with its obligation to see that justice is done.

That said, we agree with the Appellate Court that the State's agreement does not resolve the issue.[14] On the other hand, we do not share the Appellate Court's confidence about the availability of a less drastic remedy than dismissal—after an assessment of the prejudice, the conclusion that a new trial would provide a fair remedy is a possibility, but we cannot answer that question definitively. Speaking literally, a "fair trial" cannot be an appropriate lesser remedy here because under the procedural posture of this case, no trial will ever occur regardless of the Appellate Court's decision or ours. The remedy of a retrial is, in actuality, not available.

Equally as important, at bottom, the uncertainty about the evidence that would be introduced makes it difficult to ascertain whether the prejudice is irreparable or whether evidentiary rulings could be crafted to allow a fair trial. For instance, at oral argument, the State declined to take a firm position as to whether on retrial it would have introduced

---

[14]The Appellate Court correctly considered the public's "expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law." <u>Smith</u>, 255 Md. App. at 576, 283 A.3d at 741 (cleaned up). We note, though, that in protecting the fairness of prosecutions, courts must consider the value of a remedy's deterrence to discourage "future prosecutions from engaging in the same misconduct as occurred here." <u>United States v. Bundy</u>, 968 F.3d 1019, 1044 (9th Cir. 2020). The Supreme Court of the United States has observed, where governmental misconduct is concerned, that the point "is not punishment of society for misdeeds of a prosecutor but" to prevent unfairness in other trials, because "[s]ociety wins when . . . criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." <u>Brady</u>, 373 U.S at 87.

evidence of Smith's conversation with Haddaway, which Bollinger used to solicit Smith's confession. In response to questioning from this Court on that issue, the State said first that it would be speculation to guess at how that evidence would have been handled, because the State never committed to not introduce Bollinger's statement that Smith confessed to him, after Bollinger informed Smith that Haddaway had recorded him confessing to her. However, the State then agreed with the Court that the State, in the conjectural retrial, likely "would have proceeded on a confession-based type of case." There is also the open question of how the parties and circuit court would have addressed the interconnections between Haddaway, Andrews (Smith's codefendant, who cooperated with the prosecution), and Andrews's counsel, who also has passed away, as the State in a hypothetical retrial would have sought to have Andrews testify.

Despite uncertainty about the parties' potential strategies and conjecture about how evidentiary rulings would be resolved, at oral argument, the State expressed the view that the defense would face an "untenable decision" regarding how to treat Haddaway now that she is deceased:

> to either abandon Haddaway's role entirely and let the State focus its case on the confessions, although even that is . . . not a clear path, or to make Haddaway a central feature [] by introducing the remnants of her testimony in other ways [] and that would have created a host of evidentiary problems. . . . We can anticipate that much even if we don't know how they would be resolved. And we believe that that is [] a burden on the defense that has been created by the State's misconduct here.

The parties assert that this Court could conclude that the State's misconduct irreparably prejudiced Smith, preventing a fair trial, based on known facts, rather than speculation about what could have happened at a new trial. But the reality remains that

- 18 -

how the evidence would have developed at retrial requires a great deal of speculation.  For example, we know little or nothing of substance about how the impaired memories of Bollinger and the original prosecutor would have affected Smith's defense.  We decline to so speculate.

## **Fitzgerald and Lang**

Smith cites two cases in which a court has determined that a defendant's case should be dismissed after the defendant was convicted because the defendant could not receive a fair retrial: Fitzgerald, 615 F.Supp.2d 1156, and Lang, 2019 WL 1673317.[15]  Both cases are distinguishable.

First, Fitzgerald  and Lang involved much simpler evidentiary issues than Smith's case.  In Fitzgerald, 615 F.Supp.2d at 1158, 1162, the defendant was convicted of tax fraud in connection with the tax returns of the primary witness for the government, who cooperated with the prosecution in exchange for a benefit, but died after trial.  The District Court concluded that "[t]he Government's case was depend[e]nt on the testimony" of the deceased witness, that "the case came down to a credibility contest between" the defendant and the deceased witness, and that the Government had willfully suppressed recordings of conversations between the deceased witness and another person that could have been used to effectively impeach the deceased witness.  Id. at 1162.  Because such cross-examination was essential to the defense, but lost forever with the death of the witness, the Court

---

[15]We note that Rule 5.7 of the Internal Operating Procedures of the Appellate Division of the District Court for the District of the Virgin Islands states that because the District Court "does not regard unpublished opinions as precedents that bind the Court, the Court does not normally cite to its unpublished opinions as authority."

determined that "a retrial would be substantially prejudicial." Id. Although there is a similarity between the cases in that both involve deceased witnesses, here, unlike the deceased witness in Fitzgerald, while Haddaway's testimony was very important to the State's case, she was not the lynchpin of the prosecution. Significantly, unlike in Fitzgerald, Smith's codefendant Andrews cooperated with the prosecution and testified to Smith's role in the crime at his first trial, and Bollinger testified that Smith confessed to him.

In Lang, 2019 WL 1673317 at *1-3, the defendant was convicted of bank robbery and conspiracy to commit bank robbery, but the government suppressed investigative reports indicating that other people were responsible for the robbery, including an individual who became a confidential informant in an unrelated investigation into drug trafficking. As the defendant was never identified by an eyewitness and the second person involved was never identified or arrested, the reports identified three other individuals as involved in the robbery and being investigated by law enforcement for the crime. See id. at *2. The same reports indicated that the confidential informant looked like the defendant and had access to a firearm consistent with the one used in the robbery, and identified the existence of a potential witness for the defense who could testify that the confidential informant and his associates were responsible for the robbery. See id. at *2.

Significantly, the reports contained the statement of a potential witness that the three individuals (the confidential informant and his associates) were the ones who committed the robbery. See id. The District Court determined that the government recklessly withheld the witness's statement, which was Brady material, and made false

representations regarding the evidence, constituting a pattern of violations that demonstrated "reckless, and therefore willful, misconduct." Id. at *14, 16-19 (cleaned up). The Court concluded that the defendant was so prejudiced that a new trial could not be fair due to the significance of the suppressed evidence, the time that had passed (four-and-a-half years), and that the defendant had to lay out his defense strategy in the Brady proceedings, giving the government an unfair advantage in a retrial. See id. at *21-23. Although there are parallels between the nature of the suppressed materials as relating to alternative perpetrators, here, unlike in Lang, there is important other evidence of Smith's involvement in the crime. As already stated, here, Smith confessed, and Andrews testified that Smith was involved and implicated him in the crime, which are circumstances missing from Lang.

In addition, in reversing the circuit court's denial of Smith's petition for actual innocence in Smith, 468 Md. at 479-80, 227 A.3d at 620, this Court ordered retrial rather than vacating his conviction. On review of his petition for actual innocence, on brief in this Court, Smith requested

> that this Court hold that his new innocence evidence is material and grant his writ of actual innocence. In light of the unavailability of Haddaway—the State's key witness—at any future trial, [] Smith respectfully asks the Court to vacate his conviction. In the alternative, [] Smith asks the Court to remand his case to the circuit court for a new trial.

(Footnote omitted). Similarly, in his reply brief in Smith, 468 Md. 418, 227 A.3d 584, Smith stated: "For the reasons set forth above and in [] Smith's opening brief, [] Smith respectfully asks the Court to grant his Innocence Petition and vacate his conviction or, in the alternative, remand his case for a new trial." But, this Court did not grant Smith's

request to vacate the conviction and, instead, specifically ordered a new trial.[16]  Neither Fitzgerald[17] nor Lang[18] was in a similar procedural posture.

Also, as explained above, unlike the defendants in Fitzgerald and Lang, Smith has made a statement acknowledging involvement in the crime.  Although it is unclear how the State would handle the matter of information about Haddaway's conversation with Smith having been disclosed in Bollinger's interview of Smith, at oral argument, the State advised the prosecution likely would use Smith's confession at retrial.  Smith has not only previously confessed but also has entered an Alford plea containing an acknowledgment that the State has sufficient evidence to support a *prima facie* case that a jury might rely upon to return a guilty verdict.

Generally, in Maryland, defendants who enter Alford pleas acknowledge that there is sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt. "An Alford plea arises when a defendant maintains his or her innocence, but concedes that the State could adduce enough evidence to prove him or her guilty of the crime charged[.]" Cain v. State, 386 Md. 320, 326 n.7, 872 A.2d 681, 684 n.7 (2005).  "In an

---

[16]Our recognition of this procedural difference should not be read as suggesting that in Smith, 468 Md. 418, 227 A.3d 584, we addressed the claims Smith presented with his motion to dismiss.  As the Appellate Court properly concluded, we did not.  See Smith, 255 Md. App. at 569, 283 A.3d at 737.

[17]In Fitzgerald,  615 F.Supp.2d at 1158, the Court of Appeals for the Ninth Circuit had affirmed the District Court's order granting Fitzgerald a new trial on a ground unrelated to the Brady violation, and, on remand, Fitzgerald moved to dismiss based on the Brady issue.

[18]In Lang, 2019 WL 1673317 at *1, 23, upon finding that the government recklessly failed to disclose exculpatory material prior to trial, the trial court granted a motion to dismiss the indictment after the jury had returned a verdict of guilty on bank robbery and conspiracy charges.

*Alford* plea, a defendant admits that the State has sufficient evidence to obtain a conviction, but does not admit to committing the crime." Attorney Grievance Comm'n v. Smith, 442 Md. 14, 24 n.8, 109 A.3d 1184, 1190 n.8 (2015) (citing Alford, 400 U.S. 25).

This Court has often indicated that an Alford plea requires a factual basis for a finding of guilt (*i.e.*, a proffer or an agreed statement of facts). "In an *Alford* plea . . . the defendant, while maintaining innocence, agrees to a proffer of stipulated evidence or to an agreed statement of facts that provides a factual basis for a finding of guilt." Franklin v. State, 470 Md. 154, 168 n.1, 235 A.3d 1, 8 n.1 (2020) (citing Jackson v. State, 448 Md. 387, 391 n.3, 139 A.3d 976, 978 n.3 (2016)); see also Smith, 468 Md. at 438 n.6, 227 A.3d at 596 n.6.

In this case, at the plea proceeding, after reviewing the written proffer, the circuit court found that there was "a sufficient factual basis by which a finder of fact, a judge or a jury, could find the Defendant guilty of first-degree felony murder and daytime housebreaking[,]" *i.e.*, the evidence established Smith's guilt beyond reasonable doubt. Despite the inclusion of proffered facts in the plea agreement about the State's misconduct, the circuit court accepted the plea and found facts sufficient for conviction. These are extraordinary circumstances that distinguish this case from cases relied on by the parties. Neither Fitzgerald nor Lang confessed and conditionally pled guilty and then asked for the case to be dismissed on due process grounds.

Further, unlike in Fitzgerald and Lang, there is no possibility that a retrial will ever occur in this case. Under the terms of the conditional plea agreement, Smith reserved his right to appeal the denial of his motion to dismiss, as a dispositive question. This means

that the parties anticipated that if this Court were to hold that Smith was unable to receive a fair trial, with Smith's plea having been conditional, his conviction would be vacated,[19] and there would necessarily be no retrial as a result of this Court's holding. On other hand, if this Court were to affirm the denial of Smith's motion to dismiss, his conviction pursuant to the Alford plea and his sentence would stand as is (suspended sentence and probation); again, there would be no retrial. In other words, the occurrence of a retrial is illusory, meaning this Court is essentially being asked to issue something akin to an advisory opinion.[20]

This Court is being asked to issue an opinion as if there had been a retrial or would be a retrial without knowing whether key evidence would have been or would be admitted at the trial. As discussed above, despite the agreement that Haddaway's testimony would not be admissible in the State's case in chief, the uncertainty about the evidence that would be introduced at retrial makes it difficult to assess whether Smith has suffered irreparable prejudice for which no remedy other than dismissal is appropriate. And since no retrial will happen regardless of our ruling on its hypothetical fairness, we decline to address the merits of the motion to dismiss.

### Conclusion

For the reasons stated herein, we vacate the Appellate Court's judgment and remand the case to that Court with instructions to remand the case to the circuit court to vacate its

---

[19]Although the plea agreement does not explicitly state this, it follows from the requirements for a conditional plea that it preserves for review only issues that would be dispositive on appeal. See Md. Rule 4-242(d).

[20]We do not fault the Appellate Court for not grappling with this peculiar dynamic.

order denying the motion to dismiss. Smith, if he chooses, would be able to withdraw his conditional <u>Alford</u> plea. The case would be restored to the posture ordered in <u>Smith</u>, 468 Md. at 480, 227 A.3d at 620, in which we remanded Smith's case for a new trial.

At oral argument in this Court, when asked about a hypothetical similar to the outcome we reach today, the State took the position that it would not prosecute Smith:

> JUSTICE BIRAN: If this conviction were vacated but if we didn't order a dismissal, and we sent it back and said, "State, you've said to us in our Court that he should no longer be prosecuted, take it from here," the State would dismiss, wouldn't it?
>
> [THE STATE]: I think the State would be duty-bound to do so.

Nothing in this Court's mandate in <u>Smith</u>, 468 Md. at 480, 227 A.3d at 620, prohibits the State from abiding by the position it took in this Court at oral argument (or, for that matter, previously prohibited the State from taking such a position on remand in the circuit court).

Due to the unique nature of this case—the State's concession of the egregious nature of its misconduct, the unusual factual and evidentiary circumstances, and the procedural posture resulting from the conditional plea under which Smith will have no trial, fair or unfair, regardless of a holding on the merits—we return the case to the circuit court so that Smith may decide whether to withdraw his <u>Alford</u> plea and, if Smith does so, the State may act in accord with its concessions in briefing and at oral argument before the Appellate Court and this Court.[21]

---

[21]As a final matter, we note that in the conditional plea agreement, the State and the defense agreed that then-Deputy State's Attorney Marie Hill intentionally, willfully, or recklessly suppressed exculpatory evidence by, including but not limited to, withholding tapes of conversations between Bollinger and Haddaway, failing to notify trial counsel of

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR TALBOT COUNTY WITH INSTRUCTIONS TO VACATE THE DENIAL OF THE MOTION TO DISMISS AND CONDUCT FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. RESPONDENT TO PAY COSTS.**

---

the dismissal of criminal charges against Haddaway's grandson in exchange for Haddaway's cooperation, and misrepresenting the results of DNA testing. In Attorney Grievance Comm'n v. Cassilly, 476 Md. 309, 401, 403, 410, 262 A.3d 272, 327-28, 331 (2021), where, after the defendant's conviction, it was determined that, among other things, the former State's Attorney intentionally withheld exculpatory evidence and knowingly made false statements of fact to a court and defense counsel concerning evidence, this Court concluded that the former State's Attorney violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC," renamed in 2016 as the Maryland Attorneys' Rules of Professional Conduct, or "MARPC") 3.3(a)(1), 3.4(a), 3.8(d), 8.1(b), 8.4(c), 8.4(d), and 8.4(a), and imposed the sanction of disbarment. In this case, the State has acknowledged that the former Deputy State's Attorney engaged in misconduct that, if proven in an attorney disciplinary proceeding, would violate the MARPC. As such, as a separate matter from Smith's appeal, that attorney may be subject to disciplinary proceedings under the authority of the Attorney Grievance Commission.

IN THE SUPREME COURT

OF MARYLAND*

No. 31

September Term, 2022

_____

JONATHAN D. SMITH

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Watts,
Hotten,
Biran,
Gould,
Eaves,
Wilner, Alan M. (Senior Justice,
    Specially Assigned)

JJ.

_____

Dissenting Opinion by Gould, J.,
    which Wilner, J., joins.

_____

Filed: June 20, 2023

*During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

In *Faulkner v. State; Smith v. State*, 468 Md. 418 (2020), we held that the trial court abused its discretion when it denied Mr. Smith's and Mr. Faulkner's petitions for writ of innocence and therefore, we ordered that the cases be remanded to the trial court for new trials, should the State elect to proceed. *Id.* at 480. On remand, the State elected to retry Mr. Smith, but not Mr. Faulkner.[1] Pursuant to Maryland Rule 8-604(d)(1), the trial court's marching order from this Court was to proceed with the trial of Mr. Smith.[2] The unstated premise behind this Court's ruling, of course, was that a fair trial was at least potentially within the realm of possibility.[3]

On remand, Mr. Smith moved to dismiss the case because of the State's egregious *Brady*[4] violations. The record then before the trial court had not changed since this Court remanded the case. When the trial court denied Mr. Smith's motion to dismiss, he was on track for the new trial this Court had granted him. Had he proceeded to trial, the State

---

[1] On February 3, 2021, Mr. Faulkner's case was placed on the stet docket.

[2] Maryland Rule 8-604(d)(1) provides:

If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

[3] This is not to say that we so held, but if otherwise, why bother remanding for a new trial?

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

would have had the opportunity to attempt to put on a case untainted by its prior *Brady* violations, Mr. Smith would have had an opportunity to object to the admission of any evidence so tainted, and the trial court would have had the opportunity to make rulings designed to protect Mr. Smith's right to a fair trial.

But Mr. Smith was offered another way to resolve this matter—an *Alford* plea. Mr. Smith's decision to accept the *Alford* plea involved a trade-off. By taking the deal, he secured his freedom and preserved his right to appeal the trial court's denial of his motion to dismiss based on the record before it at that time. In doing so, he eliminated the risk of a conviction and a lengthy period of incarceration. Even more, he eliminated the risk that on appeal—with a full record on which the fairness of the trial could be assessed—the appellate courts would conclude that he had, indeed, received a fair trial notwithstanding the State's egregious *Brady* violations. Mr. Smith made a knowing, voluntary, and rational decision to secure his freedom while maintaining at least the possibility that an appellate court would order a dismissal of the charges.

On his subsequent appeal, the Appellate Court of Maryland was not convinced on this record that a fair trial would have been impossible and therefore held that the trial court had properly denied Mr. Smith's motion to dismiss. The Appellate Court's decision was no doubt a difficult one, particularly given the State's position—advanced by the Attorney General—that a fair trial would have been impossible. But, constrained as it was by the record before it and the governing legal principles, the Appellate Court made the right decision.

2

Indeed, today, the Majority concedes that this Court cannot conclude, based on this record, that Mr. Smith could not have received a fair trial. That finding should end the analysis and cause us to affirm the judgment of the Appellate Court. But not satisfied with that result, the Majority takes the unusual step of granting both the State and Mr. Smith a do-over—something neither party requested. Mr. Smith gets a do-over on his decision to accept the *Alford* plea; the State gets a do-over on its decision to prosecute Mr. Smith. Clearly, the Majority hopes that the State's Attorney for Talbot County will do what the Attorney General's office (and the Majority) thinks it should do—elect not to retry Mr. Smith.

Respectfully, this Court is over-stepping its authority. The State's Attorney has the authority to represent the State in the trial court, Md. Const. art. V, § 9,[5] and the Attorney

---

[5] Pursuant to Article V, Section 9 of the Maryland Constitution:

*The State's Attorney shall perform such duties and receive such salary as shall be prescribed by the General Assembly.* If any State's Attorney shall receive any other fee or reward than such as is or may be allowed by law, he shall, on conviction thereof, be removed from office; provided, that the State's Attorney for Baltimore City shall have the power to appoint a Deputy and such other Assistants as the Supreme Bench of Baltimore City may authorize or approve and until otherwise provided by the General Assembly, the said State's Attorney, Deputy and Assistants shall receive the following annual salaries: State's Attorney, seven thousand five hundred dollars; Deputy State's Attorney, five thousand dollars; Assistant State's Attorneys, four thousand dollars each; said salaries, or such salaries as the General Assembly may subsequently provide and such expenses for conducting the office of the State's Attorney as the Supreme Bench of Baltimore City may authorize or approve shall be paid by the Mayor and City Council of Baltimore to the extent that the total of them exceeds the fees of his office, or as the General Assembly shall otherwise provide, and the Mayor and City

3

General has the authority to represent the State in the appellate courts, Md. Const. art. V, § 3.[6] The distinction between the roles of these two offices is "but another facet of the principle of separation of powers" embodied in Article 8 of Maryland's Declaration of Rights that separates the functions of the legislative, executive, and judicial branches of the State government.[7] *Murphy v. Yates*, 276 Md. 475, 492 (1975). By granting the do-overs, this Court is improperly wading into matters of prosecutorial discretion vested exclusively with the State's Attorney for Talbot County.

And this Court is doing so based on the contrived premise that a retrial is "illusory" and "will [n]ever occur in this case[,]" and that therefore deciding this case would be "akin to an advisory opinion." Maj. Op. 23-24. But that a trial will never occur in the current

---

Council of Baltimore shall not be liable for appearance fees to the State's Attorney.

(Emphasis added). *See also Murphy v. Yates,* 276 Md. 475, 489-90 (1975); Md. Code Ann., Crim. Proc. (2001, 2018 Repl. Vol.) § 15-102.

[6] Article V, Section 3 of the Maryland Constitution outlines the Attorney General's responsibilities:

(a) The Attorney General shall:
   (1) Prosecute and defend on the part of the State all cases pending *in the appellate courts* of the State, in the Supreme Court of the United States or the inferior Federal Courts, by or against the State, or in which the State may be interested, except those criminal appeals otherwise prescribed by the General Assembly.

[7] Article 8 of Maryland's Declaration of Rights provides: "[t]hat the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

4

posture of the case is irrelevant. We granted writ of certiorari to decide the following

questions:

> 1. Does the State's two-decade-long pattern of intentional, willful, and/or reckless misconduct, including widespread suppression of exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963) and knowing false statements, mandate dismissal with prejudice under the Due Process Clause?
> A. Did the lower courts apply an erroneous standard and/or err in their evaluation of the prejudice suffered by Mr. Smith?
> B. Did the lower courts apply an erroneous standard and/or err in their determination that there was a less drastic alternative remedy to dismissal with prejudice?

Put simply, we took this case to decide whether the trial court erred in denying Mr.

Smith's motion to dismiss and whether the Appellate Court erred in affirming the judgment

of the trial court. The answers to those questions do not hinge on whether a fair trial is

possible *now*; but rather whether a fair trial would have been possible *then—before* Mr.

Smith took the *Alford* plea, and that determination is made based on the record as it existed

when the trial court denied Mr. Smith's motion. By taking the *Alford* plea, Mr. Smith took

a calculated risk that the appellate courts would not be persuaded based on the *existing*

record that a fair trial would have been impossible. He did not ask us for a do-over; he

asked us to decide the issue he purposefully teed up for us. By failing to do so, we are

depriving Mr. Smith the benefit of the bargain he made when he took the *Alford* plea.

To understand why the Majority's reasoning is unsound, consider the possibility

that this case may come back to the appellate courts in the identical posture. The State's

Attorney may continue to believe that a path to a conviction from a fair trial is possible,

and notwithstanding any representations made on appeal, the Attorney General would have

5

no say in the State's Attorney's discretionary decision to prosecute Mr. Smith. If the State's Attorney decides not to drop the case, Mr. Smith may rationally decide not to withdraw his *Alford* plea, in which case he will be back where he started—appealing the denial of his motion to dismiss based on the same record before us today. The only thing that will have changed is this: If Mr. Smith declines to withdraw his *Alford* plea and reboots his appeal, he will have to overcome the binding precedent of today's holding that, because there will be no retrial in this case, his appeal cannot be decided on this record. And that holding will be as wrong then as it is today.

Accordingly, for the foregoing reasons, I respectfully dissent.

Justice Wilner has authorized me to state that he joins this opinion.

Circuit Court for Talbot County
Case No. 20-K-00-006884
Argued: May 4, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 31

September Term, 2022
_____

JONATHAN D. SMITH

v.

STATE OF MARYLAND
_____

Fader, C.J.,
Watts,
Hotten,
Biran,
Gould,
Eaves,
Wilner, Alan M. (Senior Justice,
    Specially Assigned)

JJ.
_____

Dissenting Opinion by Wilner, J.
_____

Filed: June 20, 2023

*During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

I agree with Justice Gould's dissent but add, as my own, one additional point. The argument by Smith, the Attorneys General, and the amici is a two-fold one. First, they claim that, notwithstanding this Court's reluctance to so hold in *Faulkner*, a fair trial at this point is impossible. Apart from that, they urge that the State must be punished for the misconduct of its prosecutors in the first trial, as a warning to deter other prosecutors from engaging in such conduct, **and that the only effective (or perhaps even permissible) punishment capable of having that effect is to dismiss the indictment**. It is that last part to which I object.

I disagree with that reasoning. There is a far better, more traditional, way to discourage misconduct of this kind by prosecutors without punishing victims, or their families, or the public generally. It is called the Attorney Grievance Commission, created by this Court under its Constitutional rule-making authority expressly to deal with misconduct by attorneys, including prosecutors. *See* Rules 19-702, 19-706, and 19-740.

The real prospect of suspension or disbarment for the kind of misconduct exhibited in this case attacks the problem directly and far more effectively, without any collateral harm to victims, or their families, or to the general jurisprudence of the State. Dismissing the indictment and allowing Smith, who has conceded the existence of substantial evidence of his guilt, to run free, **when that is not necessary to achieve the legitimate objective of deterrence,** is telling the Talbot County community, and communities beyond, that what happened to Ms. Wilford really isn't that important. But it is important.